# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2008

Charles R. Fulbruge III
Clerk

No. 06-20951

ROBIN SINGH EDUCATIONAL SERVICES INC.

Plaintiff-Appellant

v.

EXCEL TEST PREP INC.

Defendant-Appellee

-------------------------------------------------------------------------------------------------

ROBIN SINGH EDUCATIONAL SERVICES INC.
d/b/a TestMasters

Plaintiff-Appellant

v.

EXCEL TEST PREP

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CV-1085

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This case presents the third iteration of the plaintiff's trademark claims
before this court. The underlying question is whether the plaintiff Robin Singh

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Educational Services, Inc. ("Robin Singh")[1] can assert again that it has established rights to a trademark despite failing to do so on two prior occasions against a different, but related, party. The district court concluded that the collateral estoppel doctrine bars Robin Singh's action. We agree and affirm.[2]

## BACKGROUND[3]

Plaintiff-appellant Robin Singh does business under the name TestMasters, which offers test prep services. Robin Singh operates out of Beverly Hills. It began business in 1991, and through 1996 only offered courses in California. It applied for federal registration of the trademark "TESTMASTERS" on June 23, 1995. Robin Singh's application was initially denied, because the United States Patent and Trademark Office ("PTO") found three substantially similar marks that had already been registered. After determining that none of the three marks were still in use, the PTO approved

---

[1] While our previous decisions regarding this trademark dispute involve Mr. Robin Singh as an individual litigant and this action involves "Robin Singh Educational Services, Inc." as his incorporated business, Robin Singh notes in its brief that it "is not asserting the change of identity as an issue in this case." Collateral estoppel would still apply because there is privity. See generally Meza v. Gen. Battery Corp., 908 F.2d 1262, 1266-67 (5th Cir. 1990). We will treat the individual Mr. Robin Singh and his incorporated business as the same entity for the purposes of this opinion.

[2] Since we review the district court's conclusion that collateral estoppel bars this action de novo and also conclude that this action, as a matter of law, is collaterally estopped, we do not need to reach the plaintiff's appeal of the district court's denial of its recusal motion as it is, at most, harmless. Since the issues are fully briefed, there is little to be gained by vacating the decision and remanding it on recusal grounds. See United States v. O'Keefe, 128 F.3d 885, 892-93 & n.7 (5th Cir. 1997).

[3] Facts in this section that relate to plaintiff's two previous cases before this court are found in Test Masters Educ. Servs. v. Singh, 46 F. App'x 227, 2002 WL 1940083 (5th Cir. Jul. 24, 2002) (unpublished) ("Test Masters I") and Test Masters Educ. Servs. v. Singh, 428 F.3d 559 (5th Cir. 2005) ("Test Masters II").

Robin Singh's application in March 1999 (No. 2,234,514).

Unbeknownst to Robin Singh until 1999, in 1991, Haku Israni established the Test Masters Educational Services, Inc. ("TES"). The company is also in the test preparation business; it helps individuals pass or achieve higher scores on standardized tests and professional licensing exams. TES has offered courses continuously since 1992. In May 1994, Haku Israni incorporated the business, making his son Vivek Israni its sole owner and president. Most courses are taught in Houston, where the company is headquartered, but some have been taught in other cities around Texas. The company has never taught any courses outside Texas. TES established a website in 1995: "www.testmasters.com."

In 1999, Robin Singh decided to create his own website, but discovered TES had the rights to the domain name for "TESTMASTERS." Robin Singh sued TES for trademark infringement under both federal and state law. After a five-day trial, the jury found (1) the "TESTMASTERS" mark was a descriptive mark that had a secondary meaning, sufficient to constitute a legally protected trademark; and (2) TES infringed on the mark, but was immune, because it was a prior innocent user. The district court ordered the PTO to modify the trademark registration to permit TES to use the mark in Texas, and ordered TES to transfer its rights to the domain name to Robin Singh. Both sides appealed. In Test Masters I, this court concluded that Robin Singh presented "little or no evidence regarding secondary meaning" and invalidated Robin Singh's trademark registration. 2002 WL 1940083, at *4. We vacated the district court's order. Id. at *5. Two days after the Test Masters I decision was issued, on July 26, 2002, Robin Singh applied again to the PTO to register the "TESTMASTERS" mark. In response, TES moved the district court to modify

Test Masters I's final judgment to include a permanent injunction against Robin Singh barring it from registering the trademark and infringing upon TES's usage of the mark in Texas. About one year later, on July 11, 2003, the district court granted TES's motion and entered an order permanently enjoining Robin Singh from (1) pursuing registration of the "TESTMASTERS" or "TEST MASTERS" marks with the PTO; (2) interfering with or opposing TES's registration of the "TESTMASTERS" or "TEST MASTERS" marks with the PTO; and (3) using the marks or any confusingly similar marks within Texas or directed at Texas, including but not limited to uses via the Internet. No appeals were taken.

Before the district court issued its July 11 order, Robin Singh filed a lawsuit against TES in the District Court of the Central District of California, on June 23, 2003, alleging that TES was misusing the "TESTMASTERS" trademark in California to mislead consumers into thinking that TES was affiliated with Robin Singh through its website. The court transferred the action to the Southern District of Texas which dismissed the case with prejudice concluding that res judicata barred the new action because the action presented the same operative set of facts as the operative facts in Test Masters I. The district court also rejected Robin Singh's contention that the "secondary meaning" of the trademark needs to be re-litigated only sixteen months after the Test Masters I decision.

In its decision, the district court re-iterated the provisions of its July 11 order. It also enjoined Robin Singh from "communicating directly with, threatening, or harassing Test Masters Educational Services, Inc., its employees, staff, counsel, counsel's employees, or counsel's staff." The district court ordered

4

Robin Singh to withdraw its still pending trademark registration application. The district court denied TES's motion for contempt and sanctions. Both parties appealed.

This court in Test Masters II affirmed the district court's judgment, albeit for different reasons. We concluded that while "true" res judicata did not bar Robin Singh from pursuing his claims in Test Masters II, collateral estoppel did. 428 F.3d at 572-76. First, we found the issues to be "incontrovertibly identical" to the issue presented in Test Masters I, namely, "whether the 'TESTMASTERS' trademark had acquired secondary meaning." Id. at 572. We also concluded that the alleged new facts used to urge re-litigation in Test Masters II as an exception to collateral estoppel, i.e., facts concerning Robin Singh's business success post-Test Masters I and facts alleging the establishment of secondary meaning nationwide, did not suggest "a change in the minds of the public in the relevant geographic area" that would justify re-litigation. Id. at 576 & n.7. We concluded that Robin Singh must "allege a significant intervening factual change" to justify re-litigation. Id. at 576. On First Amendment grounds, we vacated the district court's injunction order insofar as it enjoined Robin Singh from opposing TES's assertion that it has rights to the "TESTMASTERS" mark outside of the state of Texas, and insofar as the order enjoined Robin Singh from engaging in any communications with TES, its counsel and their staff.

While the Test Masters II appeal was still pending, Robin Singh sued defendant Excel Test Prep ("Excel") in the Northern District of California in November 2003. Haku Israni, TES's founder, is the co-owner of Excel, along with other members of his immediate family. Robin Singh alleges Excel is using the "TESTMASTERS" name and is advertising itself as an affiliate of a

"Testmasters" in Texas, i.e., TES. For example, Excel linked its website to the "www.testmasters.com" website owned and operated by TES. Robin Singh alleges trademark infringement and intertwined state law claims.

The California district court transferred the case to the Southern District of Texas. The Texas district court dismissed the case on collateral estoppel grounds concluding that there is no significant intervening factual change to justify re-litigation. Robin Singh timely appeals.[4]

## ANALYSIS

### I. Standard of Review

The district court dismissed this case on collateral estoppel grounds in a Rule 56(c) motion for summary judgment. We "review a grant of summary

[4] At the present moment, Robin Singh and TES are proceeding before the PTO over the underlying trademark issue in this case, i.e., who has rights to the "TESTMASTERS" mark. TES has submitted a pending application to the PTO for registering "TESTMASTERS" as its trademark. Robin Singh opposes the registration and contends it is not collaterally estopped from asserting ownership of the trademark. In an August 30, 2007 ruling, provided by Robin Singh in a Rule 28(j) letter, the PTO declined to bar Robin Singh on collateral estoppel grounds from proceeding to establish a right to register "TESTMASTERS" as its trademark. There are several reasons why this PTO decision has no bearing on this appeal, except for its limited persuasive value. First, we review all res judicata determinations de novo. Test Masters II, 428 F.3d at 571. Second, several Circuit courts have noted that federal courts are not obligated to defer to PTO proceedings nor are PTO's findings on infringement binding on federal courts. E.g., PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 80 (1st Cir. 1996) ("First, the [PTO] is not an ordinary administrative agency whose findings control unless set aside after court review under a highly deferential standard. Under the Lanham Act, where a contested Board proceeding has already addressed the validity of the mark, the Board's findings can be challenged in a civil action in district court through new evidence, and, at least to a large extent, the issues can be litigated afresh.") (citing 15 U.S.C. § 1071(b)); Rhoades v. Avon Prods., Inc, 504 F.3d 1151, 1162-165 (9th Cir. 2007). Moreover, the pending action before the PTO is significantly different from the pending action in this case for collateral estoppel purposes. The plaintiff alleges post-2003 facts related to the secondary meaning issue in the PTO proceedings that are not alleged in this case. For these reasons, we decline to take judicial notice of the PTO action for this decision. See Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 205 n.8 (5th Cir. 1998). Even if we did take judicial notice, the PTO decision would be irrelevant.

judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Pierce v. Dep't of U.S. Air Force, 512 F.3d 184, 186 (5th Cir. 2007) (internal citations and quotations omitted). "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." Id. "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." Id.

## II. Collateral Estoppel Bars Plaintiff's Claims

The dispositive issue on appeal is whether "collateral estoppel" bars a trademark infringement action based on allegations of changed factual circumstances. Cf. Test Masters II, 428 F.3d at 576 ("Because he has not alleged a significant intervening factual change, we find that our previous holding bars Singh's current claim.").

Trademark law protects holders of "distinctive" marks from infringement and confusion in the marketplace. "The holder of a distinctive mark is entitled to trademark protection and can enjoin the use of similar marks that might cause confusion in the market." Test Masters II, 428 F.3d at 566. There are several ways a mark can be considered distinctive. In this case, the jury found that the "TESTMASTERS" mark is a descriptive mark. Id. ("Descriptive marks are marks that denote a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients.") (internal quotations omitted). In order for a descriptive mark to be distinctive, and therefore protected under trademark law, the descriptive mark must have a "secondary meaning" in the minds of the public, i.e., association of the trademark with the

alleged trademark holder. A descriptive mark can become distinctive if over time "it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." Id. (internal quotations omitted). The question presented to our court in Test Masters II and in this case is: when does a final judicial decision collaterally estop a renewed attempt to re-allege the establishment of secondary meaning.

"Collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment." Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc., 434 F.3d 320, 323 (5th Cir. 2005). "Complete identity of parties in the two suits is not required. A preclusion defense, subject to certain conditions, may be invoked by a non-party against a party to the prior suit, and, in limited instances, against a non-party by a party to the prior suit." Terrell v. DeConna, 877 F.2d 1267, 1270 (5th Cir. 1989). This is a case of defensive non-mutual collateral estoppel. See United States v. Mollier, 853 F.2d 1169, 1175 n.7 (5th Cir. 1988). "Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party." United States v. Mendoza, 464 U.S. 154, 159 n.4 (1984).

The disputed "collateral estoppel" element in this case is whether the issue at stake in this pending case is identical to the issue in Test Masters I, and, therefore, likewise barred by collateral estoppel under the reasoning of Test Masters II. In Test Masters II, we concluded that the lawsuit in Test Masters II

presented "the incontrovertibly identical" issue as in Test Masters I -- "whether the 'TESTMASTERS' trademark had acquired secondary meaning" -- and therefore was collaterally estopped. Test Masters II, 428 F.3d at 572-73. In this case, the plaintiff again raises the identical issue, namely whether the "TESTMASTERS" trademark had acquired secondary meaning. For the same reasons as in Test Masters II, this case is collaterally estopped. Robin Singh offers two reasons why the issues are not identical: (1) the relevant geographic region is different; and (2) there is a significant factual change in secondary meaning since the decision in Test Masters I that justifies re-litigation. We conclude that both arguments are without merit.[5]

A. Robin Singh's "Geographical Distinction" Argument is without merit.

First, Robin Singh argues that the relevant geographic area for secondary

---

[5] Robin Singh also contends that since this case concerns non-mutual collateral estoppel and not mutual collateral estoppel, this case can be distinguished from Test Masters II. In Test Masters II, we noted that our application of collateral estoppel to that case was "bolstered" by the fact that Test Masters II only involved mutual collateral estoppel. 428 F.3d at 575 n.6. Even though this case is technically a non-mutual collateral estoppel case, considerations here equally favor the application of collateral estoppel since the parties here are related to the parties in previous litigation over the same issues and represent similar interests. Therefore, in the interests of judicial economy, collateral estoppel should apply, because the plaintiff here is relitigating identical issues by merely "switching adversaries." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329 (1979) (internal citations omitted); Acevedo-Garcia v. Monroig, 351 F.3d 547, 574 (1st Cir. 2003) ("[P]ermitting litigants to assert collateral estoppel in a defensive pose promotes efficiency by discouraging speculative lawsuits and conserving the resources of defendants."). Moreover, unlike the "offensive" use of collateral estoppel, here, the appellee is asserting the less controversial "defensive" use of collateral estoppel. Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 329-30 (1971) ("Also, the authorities have been more willing to permit a defendant in a second suit to invoke an estoppel against a plaintiff who lost on the same claim in an earlier suit than they have been to allow a plaintiff in the second suit to use offensively a judgment obtained by a different plaintiff in a prior suit against the same defendant.").

meaning purposes distinguishes this case from the previous case. It contends that because this case concerns secondary meaning in northern California and Test Masters I concerns secondary meaning in southern California, the issues are not "identical." This argument is without merit.

Even if we assume arguendo, as suggested by Robin Singh, that Test Masters I concerned only secondary meaning in southern California, Robin Singh's argument still fails. In Test Masters II, we specifically concluded that Test Masters I collaterally estops Robin Singh from alleging the establishment of secondary meaning nationwide. See Test Masters II, 428 F.3d at 576 & n.7 ("Here, the relevant geographic area is the entire nation since he is alleging that his TESTMASTERS mark has acquired secondary meaning nationwide, and not just in his primary market of California."). In other words, the plaintiff's change in geographical focus from California to the entire nation for "secondary meaning" analysis did not affect our conclusion in Test Masters II that the "secondary meaning" issues were identical in Test Masters I and Test Masters II for collateral estoppel purposes. Id. at 576 & n.7. For the same reasons, Robin Singh's current switch in geographical focus from "secondary meaning" in southern California and nationwide in Test Masters I and Test Masters II respectively to northern California in this case does not affect our conclusion that the "secondary meaning" issue in this case is identical to the two Test Master cases for collateral estoppel purposes. Our decision in Int'l Breweries, Inc. v. Anheuser-Busch, Inc., 364 F.2d 261 (5th Cir. 1966) supports this holding. In Int'l Breweries, we concluded that since a previous court had already decided that the plaintiff could only establish "secondary meaning" in one local area and could not do so anywhere outside of that local area, the plaintiff was barred by

10

estoppel from later attempting to re-establish "secondary meaning" in those areas outside of the proscribed local area. 364 F.2d at 264. For the same reasons, Robin Singh's action is barred here. Robin Singh failed to establish secondary meaning anywhere in the United States, and therefore is estopped from trying to re-establish "secondary meaning" anywhere in United States, including northern California.

Moreover, while Robin Singh suggests Test Masters I was limited to evidence of secondary meaning from southern California, this court in Test Masters II read Test Masters I as explicitly ruling on the entire California market. Test Masters II, 428 F.3d at 571-72 ("The operative facts in the first action included: . . . TES has never done business in California, whereas California is Singh's main market. . ."). Consistent with Test Masters II's reading of Test Masters I, we have held that a "state" is the appropriate geographical region when considering trademark disputes; thus, we read Test Masters I as a decision that applies to the entire state of California. Sheila's Shine Prod., Inc. v. Sheila Shine, Inc., 486 F.2d 114, 124 (5th Cir. 1973). Accordingly, Robin Singh's attempt to distinguish the issue in this action from Test Masters I because this suit only concerns the northern California market is without merit.

B. No "Significant Intervening Factual Change."

In Test Masters II, we concluded that secondary meaning could be established in subsequent re-litigation and exempted from collateral estoppel if the plaintiff alleges some "set of facts that would suggest that there has been a change in the minds of the public in the relevant geographic area such that they could immediately associate the [trademark] with [the plaintiff]." 428 F.3d at

576 (emphasis added). The change must allege "a significant intervening factual change" Id. In this present action, Robin Singh does not present allegations of any factual developments in its establishment of secondary meaning post-2003. In fact, Robin Singh presents similar facts and evidence concerning the same time-frame as the facts and evidence presented to this court in Test Masters II. Therefore, Robin Singh does not allege any factual change since the ruling in Test Masters II and again presents the same types of factual allegations that deal primarily with Robin Singh's recent business success. As we noted in Test Masters II, Robin Singh's business "success is not dispositive of the question of secondary meaning." 428 F.3d at 576. For the same reasons as in Test Masters II, wherein we found no significant factual change during that same time-period since Test Masters I, we also conclude here that no significant intervening factual change has occurred during that same time period based on similar factual allegations. See id. We agree with the district court and now apply collateral estoppel to bar this new action.[6]

---

[6] Collateral estoppel also bars Robin Singh's state law claims, which are the same ones (except for, arguably, a trademark dilution claim) asserted and barred by estoppel in Test Masters II. See Test Masters II, 428 F.3d at 576 ("Singh's common law and federal statutory claims for trademark protection are fatally intermixed with the issue of secondary meaning. . . . Because we have previously held that Singh's mark has no secondary meaning, the district court was correct in granting [defendant's] motion to dismiss Singh's federal statutory and state common-law infringement claims."). Robin Singh's argument that the "secondary meaning" issue does not implicate California state claims under section 17200 of the California Business & Professions Code is without merit. This same argument was made and rejected in Test Masters II. Id. While the Test Masters II complaint arguably does not include the "trademark dilution" claim now asserted in this action, the Test Masters II complaint does allege a general violation of the California statute that prohibits trademark dilution, i.e., California Business and Professions Code § 14330. Assuming arguendo that "trademark dilution" is a new claim, it is still barred by collateral estoppel for the same reasons identified in Test Masters II: the state claim is "fatally intermixed with the issue of secondary meaning." Id. In order to establish the "famousness" required for an action under section 14330, a

## CONCLUSION

For the foregoing reasons, the district court judgment is
AFFIRMED.

---

plaintiff must at least be able to establish the same facts needed to establish "secondary meaning."  See Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875-76 (9th Cir. 1999) (including the considerations for famousness, which overlap with establishment of "secondary meaning"); Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1539 (9th Cir. 1989).