COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                                 NO.
2-06-443-CV

 

 

VERNON
F. MINTON                                                                         APPELLANT

 

                                                             V.

 

JERRY
W. GUNN, INDIVIDUALLY;                                                    APPELLEES

WILLIAMS SQUIRE
& WREN, LLP; 

JAMES E. WREN, INDIVIDUALLY; 

SLUSSER
& FROST, L.L.P.; 

WILLIAM C. SLUSSER,
INDIVIDUALLY; 

SLUSSER WILSON &
PARTRIDGE LLP;

AND MICHAEL E. WILSON, INDIVIDUALLY

 

                                                       ------------

 

               FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------








This
is a legal malpractice case in which the trial court rendered take-nothing
summary judgment against appellant Vernon F. Minton in favor of appellees Jerry W. Gunn, individually, Williams Squire
& Wren, LLP, James E. Wren, individually, Slusser
& Frost, L.L.P., William C. Slusser,
individually, Slusser Wilson & Partridge LLP, and
Michael E. Wilson, individually, all of whom represented appellant in a prior
patent infringement action.  We affirm.

I.    
Brief Summary of Relevant Patent Law Rules

A.      The On Sale Bar Rule

This
legal malpractice case involves application of a rule of federal patent law
commonly referred to as the Aon
sale bar rule.@  This rule provides that a patent is invalid
if it was put into commercial use through a commercial offer for sale more than
one year before the inventor applied for the patent.[1]  Under federal patent law, the date one year
prior to the patent application=s
filing is commonly referred to as the Acritical
date.@[2]  A single commercial offer for sale before the
critical date is generally sufficient to satisfy the on sale bar.[3]








B.      The Experimental Use Doctrine

This
case also involves the Aexperimental use doctrine.@  This doctrine provides that if the purpose of
an offer for sale is primarily experimental, as opposed to commercial, the
patent is not invalidated under the on sale bar rule.[4]

The
ultimate question of whether a transaction is primarily for experimental use is
one for the court to decide.[5]  When patent holders or inventors contend that
the experimental use doctrine applies, they are arguing that the on sale bar
does not apply because it has been negated by the primarily experimental
purpose of the commercial offer for sale.[6]








In
determining whether the experimental use doctrine negates application of the on
sale bar, the controlling issue is the purpose of the offer for sale, not the
developmental status of the claimed invention.[7]  In other words, the question posed by the
experimental use doctrine is not whether the invention is Aunder
development, subject to testing, or otherwise still in its experimental stage@ at
the time of alleged sale, but whether the primary purpose of the inventor at
the time of the sale was to conduct experimentation.[8]  ACommercial
exploitation, if not incidental to the primary purpose of experimentation, will
result in an on sale bar, even if the invention was still in its experimental
stage.@[9]

II.     Factual and Procedural Background

 

A.      The TEXCEN Lease

In
the early 1990s, appellant Vernon Minton, a former
securities broker, formed a company called Texas International Stock Exchange,
Inc. (TISE) and began developing a telecommunications
network and software program called the Texas Computer Exchange Network (TEXCEN).  TEXCEN was designed to allow individuals to trade
securities through a computer network.








In
1994, Minton approached R. M. Stark & Co. (Stark), a National Association
of Securities Dealers, Inc. (NASD) brokerage/dealer, regarding a potential
lease of the TEXCEN system.  In January 1995, Minton sent Stark a letter
stating that A[a]fter five years of development, TEXCEN
is scheduled to be on-line during March or April of this year,@ and
that, A[a]s
we discussed, [TISE] would appreciate your
consideration in utilizing this program as an exclusive opportunity for
enhanced order flow.@  Minton attached a draft lease agreement that
stated it was intended Afor the purpose of opening
brokerage accounts and executing trades for individuals using TEXCEN.@

Throughout
negotiations, Minton never told Stark that the TEXCEN
lease would be for experimental purposes, although Stark was aware that the
system needed to be reviewed and approved by NASD before he could use it.  Stark and TISE
entered the TEXCEN lease on March 8, 1995 (the TEXCEN Lease).  The
lease provided in part that (1) Stark had the right to open brokerage accounts
and execute trades for its individual customers using TEXCEN,
(2) TEXCEN would perform in a workmanlike manner, and
(3) Stark would pay the lesser of $2,000.00 or thirty percent of his gross
revenues derived from TEXCEN per month for the term
of the lease.

B.      The >643
Patent

On
June 28, 1996, Minton filed his provisional application for United States
Patent No. 6,014,643 (the >643
Patent), more than one year after signing the TEXCEN
Lease.  The >643
Patent was for an interactive securities trading system based substantially on TEXCEN.  Indeed,
Minton stated in his deposition that he provided a copy of the TEXCEN software assistance guide to his patent attorney,
who used it to prepare the >643
Patent application.  On
January 11, 2000, the United States Patent and Trademark Office issued the >643
Patent. 








C.      The Underlying Patent Litigation

Minton
filed suit against NASD in the United States District Court for the Eastern
District of Texas to enforce the >643
Patent (the Patent Litigation), and later named NASDAQ Stock Market, Inc.
(NASDAQ) as an additional defendant. 
Minton=s
lawyers in the Patent Litigation, the appellees in
this case, filed suit without knowledge of the TEXCEN
Lease.  Minton did not disclose the lease
to appellees until after NASD and NASDAQ first
revealed its existence in discovery conducted in the Patent Litigation.

NASD
and NASDAQ moved for summary judgment on Minton=s
infringement claims on the ground that the >643
Patent was invalid under the on sale bar set forth in 35 U.S.C.
' 102(b).  They specifically contended that TEXCEN embodied Minton=s
invention and that the lease, signed March 8, 1995, was a commercial offer for
sale prior to the >643 Patent=s
critical date of June 28, 1995.  Appellees contend that, among other things, NASD and NASDAQ
asserted that the TEXCEN Lease: (1) stated that TEXCEN was already developed; (2) offered TEXCEN for use with customers; (3) established payment
terms; (4) warranted that TEXCEN would perform; and
(5) stated that the lease was entered for the purpose of allowing individuals
to open brokerage accounts and execute trades.








Minton
testified in the Patent Litigation that he expected to Abenefit
financially@
from the lease and that, subject to regulatory approval, the lease allowed
Stark to use TEXCEN Acommercially.@  Minton conceded that TEXCEN
was offered for sale more than one year before his patent was filed, but argued
that TEXCEN did not include all of the elements of
the >643
Patent=s
claims and thus the on sale bar did not apply. 
The district court granted NASD and NASDAQ=s
motion for summary judgment based upon the on sale bar.

Following
the district court=s order, Minton asked his
attorneys to consider defense of the on sale bar on a new ground:  that the purpose of the TEXCEN
Lease was primarily experimental rather than commercial, and, therefore, the
experimental use doctrine negated the on sale bar.  A motion for reconsideration was filed on
Minton=s
behalf, with the experimental use issue briefed by new counsel.  The district court considered Minton=s
motion but declined to grant reconsideration.[10]








Minton
appealed, and the Federal Circuit affirmed the district court=s
judgment.[11]  The Federal Circuit declined to address the
merits of Minton=s argument based on the
experimental use defense, stating that the district court was within its
discretion in deciding not to consider experimental use as a defense and
denying Minton=s
motion for reconsideration, in part because the motion was based on an argumentCthe
experimental use doctrineCthat was not previously
raised but Ahas
long been a fixture of patent law.@[12]

D.      The Legal Malpractice Action

On
August 25, 2004, Minton filed this legal malpractice action against appellees on the ground that they negligently failed to
timely plead and brief the experimental use doctrine as a defense to NASD and
NASDAQ=s
showing that the section 102(b) on sale bar invalidated the >643
Patent.  Minton alleges that appellees=
negligence caused him to lose the Patent Litigation or, in the alternative,
caused the Patent Litigation=s
pretrial dismissal, depriving him of a settlement of $100,000,000.00.








Appellees
filed no-evidence and traditional motions for summary judgment attacking the
causation element of Minton=s
malpractice claim.[13]  Appellees argued
that the experimental use exception did not apply to the TEXCEN
Lease and, thus, as a matter of law, their alleged failure to timely plead and
brief the defense could not have caused Minton harm in the Patent
Litigation.  The trial court ruled in appellees=
favor and rendered a take-nothing judgment on all claims.[14]  This appeal followed.

III.     Issues on Appeal

Minton
presents ten complaints challenging the trial court=s
summary judgment:

(1)     The trial court erred in ruling that the
issue of whether the TEXCEN Lease was primarily for
the purposes of experimental use was a question of law.

 

(2)     The trial court erred as a matter of law by
merely holding that the TEXCEN Lease had a commercial
purpose rather than holding that the TEXCEN Lease=s purpose was Aprimarily@ commercial.

 

(3)     The trial court erred in concluding as a
matter of law that the TEXCEN Lease had a commercial
purpose.

 

(4)     The trial court erred by improperly
limiting the application of the experimental use exception to situations where
the testing had to be on a required claim of the patent.

 

(5)     The trial court erred in not considering
testing of the invention that was not limited to the internet.

 








(6)     The trial court erred as a matter of law by
concluding that expert testimony was required to support the experimental use
exception.

 

(7)     The trial court erred by concluding that
there was no evidence to support the experimental use exception.

 

(8)     The trial court erred as a matter of law by
concluding that any evidence tending to show the experimental use exception
must be limited to the period up to and including June 28, 1996, the date of
the >643
Patent application.

 

(9)     The trial court abused its discretion in
striking Minton=s exhibits 32a, 32b, 39, and 40 as hearsay
even though they met the hearsay exception for business records.

 

(10)    The trial court=s legal and
evidentiary errors probably caused the rendition of an improper judgment and probably
prevented Minton from properly presenting the case to this court.

 

In a
single cross-point, appellees complain of the trial
court=s
refusal to strike from the summary judgment record certain evidence submitted by
Minton of alleged experimental use.

Before
addressing the merits of these complaints, we must decide whether we have
subject matter jurisdiction over this case.








IV.     Subject Matter Jurisdiction

Relying primarily on two decisions of the Federal
Circuit,[15]
and a decision of the Fifth Circuit that does not involve a legal malpractice
claim,[16]
Minton contends that we must dismiss this appeal for lack of subject matter
jurisdiction because Minton=s
legal malpractice claim Aarises under@ the
exclusive patent law jurisdiction of the federal courts.  We disagree and conclude that Minton=s
claim does not confer exclusive subject matter jurisdiction on the federal
courts.








Under
Texas law, A[w]hen
a legal malpractice claim arises from earlier litigation, the plaintiff . . .
bears the burden to prove he would have prevailed on the underlying cause of action.@[17]  In other words, the plaintiff must prove a
case within a case.[18]  Thus, Minton=s
ability to recover turns on whether he can prove by a preponderance of the
evidence that the appellees=
allegedly negligent failure to timely plead and brief Aexperimental
use@
caused the dismissal of his patent infringement claims in the Patent
Litigation.








A
federal question exists Aonly [in] those cases in
which a well-pleaded complaint establishes either that federal patent law
creates the cause of action or that the plaintiff=s
right to relief necessarily depends on resolution of a substantial question of
federal patent law.@[19]  The fact that treatment of a substantial
federal question is necessary to the resolution of a state-law claim is not,
however, sufficient to permit federal jurisdiction.  A[T]he presence of a disputed federal issue [in a state cause of
action] . . . [is] never necessarily dispositive.@[20]  Instead, Athe
question is, does a state-law claim necessarily raise a stated federal issue,
actually disputed and substantial, which a federal forum may entertain without
disturbing any congressionally approved balance of federal and state judicial
responsibilities.@[21]  AIn
other words, federal question jurisdiction exists where (1) resolving a federal
issue is necessary to resolution of the state-law claim; (2) the federal issue
is actually disputed; (3) the federal issue is substantial; and (4) federal
jurisdiction will not disturb the balance of federal and state judicial
responsibilities.@[22]  While the first and second elements of this
test may be satisfied here, the third and fourth are not.

The
federal issue here is not substantial. 
Although significant to Minton=s
claim, the issue of whether there was evidence of experimental use of the
technology at issue is predominantly one of fact, with little or no
precedential value.  Therefore,
resolution of the issue will not require Aresort
to the experience, solicitude, and hope of uniformity that a federal forum
offers.@[23]  The courts of this state are perfectly
capable of deciding cases such as this.








Not
only is the federal law issue insubstantial, but the exercise of federal
jurisdiction over this state-law malpractice claim would disturb the balance
between federal and state judicial responsibilities.  ALegal
malpractice has traditionally been the domain of state law, and federal law
rarely interferes with the power of state authorities to regulate the practice
of law.@[24]  To extend federal jurisdiction to every
instance in which a lawyer commits alleged malpractice during the litigation of
a patent claim (or other federal law claim) would Aconstitute
a substantial usurpation of state authority in an area in which states have
traditionally been dominant.@[25]

For
these reasons, we hold that Minton=s
legal malpractice claim does not Aarise
under@
federal law.[26]








In
so holding, we decline to follow the Federal Circuit=s
decisions in Immunocept and AMT for
two reasons:  First, the Federal Circuit=s
holdings are not binding on this court. 
The Supreme Court of Texas has explained that:  AWhile
Texas courts may certainly draw upon the precedents of the Fifth Circuit, or
any other federal or state court, in determining the appropriate federal rule
of decision, they are obligated to follow only higher
Texas courts and the United States Supreme Court.@[27]  Second, we believe the Federal Circuit
misapplied United States Supreme Court precedent by disregarding the federalism
analysis that the Supreme Court has applied to restrict the scope of federal Aarising
under@
jurisdiction to a Aspecial and small category@ of
cases where a substantial question of pure federal law is in dispute that has
precedential value.[28]  According to the United States Supreme Court,
claims that are Afact-bound and
situation-specific,@ such as the legal
malpractice claim at issue in this case, do not fall
within the scope of federal Aarising
under@
jurisdiction.[29]  While this result may conflict with Federal
Circuit decisions, we are obligated only to follow the rules for determining Aarising
under@
jurisdiction established by the United States Supreme Court.

We
now turn to the merits.








V.     Standards of Review

The
trial court=s
take-nothing summary judgment against Minton was rendered on both traditional
and no-evidence motions for summary judgment filed by appellees.

A.      Traditional Summary Judgment

In
reviewing a traditional summary judgment, the issue on appeal is whether the movant met the summary judgment burden by establishing that
no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law.[30]  The burden of proof is on the movant, and all doubts about the existence of a genuine
issue of material fact are resolved against the movant.[31]  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s
favor.[32]  Evidence that favors the movant=s
position will not be considered unless it is uncontroverted.[33]








A
defendant who conclusively negates at least one essential element of a cause of
action is entitled to summary judgment on that claim.[34]  Once the defendant produces
sufficient evidence to establish the right to summary judgment, the burden
shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant.[35]

B.      No-Evidence Summary Judgment








Rule
166a(i) of the Texas Rules of Civil Procedure governs
no-evidence summary judgments.[36]  Under this rule, after an adequate time for
discovery, the party without the burden of proof may, without presenting
evidence, move for summary judgment on the ground that there is no evidence to
support an essential element of the nonmovant=s
claim or defense.[37]  The motion must specifically state the
elements for which there is no evidence.[38]  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that
raises a genuine issue of material fact.[39]

When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging
every reasonable inference and resolving any doubts against the motion.[40]  If the nonmovant
brings forward more than a scintilla of probative evidence that raises a
genuine issue of material fact, then a no-evidence summary judgment is not
proper.[41]  We review a no‑evidence
summary judgment for evidence that would enable reasonable and fair‑minded jurors to differ in their conclusions.[42]

VI.     Analysis

A.      The Purpose of
the TEXCEN Lease was Commercial and There is No
Evidence that the Lease was Primarily for Experimental Use








The
pivotal questions we must decide in reviewing the trial court=s
summary judgment are:  (1) whether the
trial court correctly concluded that the TEXCEN Lease
had a commercial purpose as a matter of law (2) and whether the trial court
correctly found that there is no evidence to support Minton=s
claim of an experimental purpose for the TEXCEN
Lease.  We conclude that both trial court
rulings are correct.

1.       The
Commercial Purpose of the Lease was Established as a
Matter of Law

The TEXCEN Lease expressly states that Stark was leasing TEXCEN for commercial use. 
In its preamble, the lease provides that A[Stark]
. . . wishes to lease TEXCEN from TISE for the purpose of opening brokerage accounts and
executing trades for individuals using TEXCEN.@  It further requires Stark to pay for the use
of TEXCEN for three years (with an option of up to
thirteen years) and warrants that TEXCEN will perform
in a workmanlike manner.  There is no
language in the lease that indicates that the lease had an experimental
purpose.

In
addition to the express language of the TEXCEN Lease,
Minton offered deposition testimony in the Patent Litigation which established
that the purpose of the lease was commercial:

Q.      Okay.  And they were_now, they were seeking_still seeking the regulatory approval,
correct?

 

A.      Yes,
sir.

 

Q.      But subject to that regulatory
approval, what was contemplated was that Stark would set up a system using the TEXCEN software program and_to use it
commercially, correct?

 

A.      Yes,
sir.








Q.      And_and that occurred beginning in March
1995, correct?

 

A.      Yes,
sir.

 

Q.      And you expected to benefit
financially from that arrangement, correct?

 

A.      Yes,
sir (emphasis added).

 

Based
on the language of the TEXCEN Lease and Minton=s
own testimony establishing the commercial purpose of the lease, we hold that
the trial court did not err in concluding that the TEXCEN
Lease had a commercial purpose as a matter of law.

2.       There
is No Evidence that any Purpose of the TEXCEN Lease
was Experimental

a.       Minton=s Claim of an Alleged
Experimental Purpose for the TEXCEN Lease Does not Relate to a Claimed Element of the >643 Patent

 

The
trial court concluded, as a matter of law, that the claims of
the >643 Patent do not require
that the program work over a TCPIP or internet
connection and, thus, any evidence of testing over a TCPIP
or internet connection is legally irrelevant to show an experimental purpose
for the TEXCEN Lease. 
We agree with this conclusion.








Under
settled patent law, the experimental use doctrine applies only to
experimentation that relates to a claimed feature of the invention, either as
expressly stated in a claim or inherent to the subject matter of a claim.[43]  When evaluating whether a feature is claimed
by an invention, courts look to details that are Aspecifically
recited or necessary to the invention covered by the claims in suit.@[44]  For example, courts have held that testing
for durability may negate application of the on sale bar even when durability
is not specifically claimed in the patent, but only if durability is inherent
to Athe
nature of the invention@ based on Athe
claims=
reference to the subject matter.@[45]








Therefore,
our inquiry focuses on whether the attributes that Minton testifies were being
testedCTEXCEN=s
ability to process actual trades over an internet connectionCrelate
to a claimed feature of the >643
Patent.  If not, then Minton=s
testimony regarding this testing will not, as a matter of law, support
experimental use.[46]








Minton
contends that testing TEXCEN over the internet is a
claimed feature of the >643 Patent because the
patent claims that it will work over Aa
public communication network@ and
that the internet is one such network. 
However, the patent specifies that A[t]he
method by which users . . . communicate with [the] server . . . is not
important, as the present invention simply requires that the users be able to
send and receive information to [the] server.@[47]  The patent also provides a nonexclusive list
of communication methods that may be employed, including Apublic
telephone lines,@ Acable
modems, local area networks [LANs], wireless communications, fiber optics
lines, and others.@[48]

Because
the express language of the >643
Patent conclusively demonstrates that performance over the internet is not
inherent to any claimed feature of the patent, we hold that the trial court did
not err in concluding that there is no evidence to support Minton=s
claims of experimental use because evidence of testing over the internet is
legally irrelevant to show an experimentation purpose for the TEXCEN Lease.








b.       Even Assuming Testing Over the Internet
Relates to a Claimed Feature of the >643 Patent, There is no Evidence to Support
Minton=s Claim that the
Purpose of the TEXCEN Lease was Experimental

 

The
trial court found that, assuming Minton=s
evidence of testing relating to a TCPIP or internet
connection is relevant, Minton still did not produce sufficient evidence to
raise a genuine issue of material fact to support his claim of experimental
use.[49]  We agree with the trial court=s
finding because Minton presented no probative evidence that Stark was actually
aware that the purpose of the offer for sale was primarily experimental when
the lease was executed.[50]

The
determination of experimental use is an objective inquiry based on the facts
surrounding the transaction.[51]  Courts have considered a number of objective
factors when making an experimental use determination, including, but not
limited to:








(1) the necessity for public testing, (2) the
amount of control over the experiment retained by the inventor, (3) the nature
of the invention, (4) the length of the test period, (5) whether payment was
made, (6) whether there was a secrecy obligation, (7) whether records of the
experiment were kept, (8) who conducted the experiment, (9) the degree of
commercial exploitation during testing, (10) whether the invention reasonably
requires evaluation under actual conditions of use, (11) whether testing was
systematically performed, (12) whether the inventor continually monitored the
invention during testing, and (13) the nature of contacts made with potential
customers.[52]

 

With
regard to the last factor _
nature of contacts made with potential customers _ the Federal Circuit
has held that a customer=s awareness that the purpose
of the sale was for experimental use is a Acritical
attribute of experimentation.@[53]  If an inventor fails to communicate to a
customer that the sale of the invention was made in pursuit of experimentation,
then the customer, as well as the general public, can only view the sale as a
normal commercial transaction.[54]  A[An
inventor=s]
failure to communicate to any of the purchasers or prospective purchasers of
his device that the sale or offering was for experimental use is fatal to his
case.@[55]  In other words, customer awareness of the
sale or offering=s experimental purpose is dispositive.[56]








In
his deposition testimony, Minton admitted that he never told Stark that the
purpose of the TEXCEN Lease was to develop, test, or
conduct experimentation on TEXCEN.  Indeed, the summary judgment record contains
no evidence showing that Stark was aware at the time the lease was executed
that it was for experimental purposes. 
At most, the evidence on which Minton relies to establish Stark=s
awareness of the lease=s experimental purpose
merely shows that Stark knew at the time the lease was executed that TEXCEN was under development and that it may require
further testing.  This evidence does not
prove that the purpose of the lease was experimental.[57]  Nor does Minton=s
subjective characterization of the purpose of the lease made after the Patent
Litigation constitute sufficient probative evidence to establish that Stark was
aware of any alleged experimental use.[58]








Because
there is no evidence that Stark was aware that the actual purpose of the TEXCEN Lease was experimental, we hold that, even assuming
testing over the internet is relevant to a claimed element of the >643
Patent, the trial court did not err in finding that Minton failed to raise a
genuine issue of material fact on his claim that the TEXCEN
Lease had an experimental purpose. 
Therefore, as a matter of law, the lease was not primarily
experimental in purpose and Minton has no defense to the on sale bar under the
experimental use doctrine.

VII.     Conclusion

In sum, we hold that Minton=s
legal malpractice claim does not Aarise
under@
federal law, and that we have jurisdiction over this appeal.  We further hold that the trial court did not
err in granting appellees=
traditional motion for summary judgment based on its conclusion that the TEXCEN Lease had a commercial purpose as a matter of law,
and in granting appellees=
no-evidence motion for summary judgment on the ground that Minton failed to
produce sufficient relevant evidence to raise a genuine issue of material fact
to support his claim of experimental use.[59]  The trial court=s
summary judgment is affirmed.

 

 

JOHN CAYCE

CHIEF JUSTICE

 

PANEL: 
CAYCE, C.J.; GARDNER and WALKER, JJ.

 








WALKER, J. filed a dissenting opinion.

 

DELIVERED: 
October 8, 2009

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-06-443-CV

 

 

VERNON F. MINTON                                                                         APPELLANT

 

                                                             V.

 

JERRY W. GUNN, INDIVIDUALLY;                                                    APPELLEES

WILLIAMS SQUIRE &
WREN, LLP; JAMES

E. WREN, INDIVIDUALLY; SLUSSER
&

FROST, L.L.P.;
WILLIAM C. SLUSSER, 

INDIVIDUALLY; SLUSSER
WILSON &

PARTRIDGE, L.L.P; AND MICHAEL E. 

WILSON, INDIVIDUALLY

 

                                                       ------------

 

               FROM
THE 48TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                          DISSENTING OPINION

 

                                                       ------------

 

I.  INTRODUCTION








I
respectfully dissent.  Because the
federal courts possess exclusive jurisdiction over Appellant Vernon F. Minton=s
legal malpractice suit against Appellees Jerry W.
Gunn, individually; Williams Squire & Wren, LLP; James E. Wren,
individually; Slusser & Frost, L.L.P.; William C. Slusser,
individually; Slusser Wilson & Partridge, L.L.P.; and Michael E. Wilson, individually, I would grant
Minton=s
motion to dismiss, vacate the trial court=s
order granting summary judgment for Appellees, and
remand the case to the trial court for disposition in accordance with this
opinion.

II.  FACTS

A.  Minton=s
Patent Infringement Suit in Federal Court

In
the underlying litigation giving rise to Minton=s
legal malpractice claim, Minton sued NASD and NASDAQ Stock Market, Inc. in the
United States District Court for the Eastern District of Texas for patent infringement.[1]  The federal trial court granted NASD and
NASDAQ=s AMotion
for Summary Judgment that [the =643
Patent] is Invalid under the >On
Sale= Bar
Provision of 35 U.S.C. '
102(b).@  See 35 U.S.C.A.
'
102(b) (West 2001).  The trial court
granted summary judgment for NASD and NASDAQ based on the on sale bar rule, and
the Court of Appeals for the Federal Circuit affirmed the trial court=s
summary judgment.  See Minton v. Nat=l
Ass=n of
Sec. Dealers, Inc., 336 F.3d 1373,
1381 (Fed. Cir. 2003).

B.  Minton=s
Legal Malpractice Suit in State Court








Minton
subsequently filed a legal malpractice suit in state court; his original
petition asserted that Appellees, his attorneys in
the underlying federal patent infringement suit, negligently did not plead or
brief the experimental use exception to the on sale bar rule in an amended
petition, in Minton=s summary judgment response,
or in the response to the trial court=s
request for briefing.  These allegations
are the sole basis for Minton=s
legal malpractice suit; he pleaded that Appellees
owed a duty to represent him in his patent infringement suit within the
applicable standard of care and that they breached their duty to him by A[f]ailing
to timely plead and brief the experimental use defense.@

Appellees
filed two joint combined traditional and no-evidence motions for summary
judgment in Minton=s state legal malpractice
action asserting that Athe record establishes as a
matter of law that Defendants=
conduct did not proximately cause Minton=s
alleged damages because Minton would not have been able to successfully defeat
the on sale bar either at the summary judgment stage or at trial.@  The trial court granted both Appellees=
joint motions for summary judgment.  This
appeal followed, and Minton filed a motion to dismiss, alleging that the
federal courts possess exclusive jurisdiction over his legal malpractice suit.

III.  THE LAW CONCERNING SECTION
1338 JURISDICTION








The
United States Code provides that A[t]he
district courts shall have original jurisdiction of any civil action arising
under any Act of Congress relating to patents . . . .  Such jurisdiction shall be exclusive of the
courts of the states in patent . . . cases.@  28 U.S.C.A.
'
1338(a) (West 2006).[2]  The United States Supreme Court has for
nearly 100 years recognized that in certain cases federal question jurisdiction
will lie over state law claims that implicate significant federal issues.  Grable
& Sons Metal Prods., Inc. v. Darue
Eng=g
& Mfg., 545 U.S. 308, 312, 125 S. Ct. 2363, 2367 (2005).








A
significant federal issue is implicated when a well-pleaded complaint
establishes that the plaintiff=s right
to relief necessarily depends on resolution of a substantial question of
federal patent law in that federal law is a necessary element of the
well-pleaded complaint.  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800,
809, 108 S. Ct. 2166, 2174 (1988). 
The well-pleaded complaint rule is the starting point in analyzing
Section 1338 jurisdiction in suits involving patents.  See, e.g.,
Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429
(1987).  Under this Awell-pleaded
complaint@
rule, whether the claim arises under federal patent law A>must
be determined from what necessarily appears in the plaintiff=s
statement of his own claim . . . unaided by anything alleged in anticipation or
avoidance of defenses which it is thought the defendant may interpose.=@  Christianson, 486 U.S. at 809, 108 S.
Ct. at 2174 (quoting Taylor v. Anderson, 234 U.S. 74, 75B76,
34 S. Ct. 724, 724 (1914)).  The complaint
must do more than demonstrate that a question of federal patent law is Alurking
in the background.@  Franchise Tax Bd. of
State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1,
12, 103 S. Ct. 2841, 2847 (1983). 
A complaint successfully establishes that a plaintiff=s
right to relief necessarily depends on a substantial question of patent law and
that federal law is a necessary element of the well-pleaded complaint when from
the plaintiff=s
pleading, it appears that some right or privilege will be defeated by one
construction or sustained by the opposite construction of patent laws.  Christianson, 486
U.S. at 807B08, 108 S. Ct. at 2173.[3]  But a pleaded claim supported by alternative
theories in the complaint may not form the basis for Section 1338 jurisdiction
unless patent law is essential to each of those theories.  Id. at 812, 108 S. Ct. at 2175B76
(recognizing, in applying well-pleaded complaint doctrine, that although the
patent issue could be an element of the plaintiff=s
monopolization antitrust theory and plaintiff=s
group-boycott antitrust theory, plaintiff=s
complaint also pleaded reasons completely unrelated to the provisions and
purposes of federal patent law why the plaintiff might be entitled to the
relief sought so that plaintiff=s
claims did not Aarise under@
Section 1338).








In
determining whether federal question jurisdiction exists, in addition to
examining whether a well-pleaded complaint establishes that the plaintiff=s
right to relief necessarily depends on resolution of a substantial question of
federal patent law in that federal law is a necessary element of the
well-pleaded complaint, courts must also conduct a federalism analysis.  Grable, 545 U.S. at 313B14, 125
S. Ct. at 2367B68.  That is, courts must also examine whether
federal court jurisdiction over a state claim implicating a substantial
question of federal law is consistent with congressional judgment regarding the
proper division of labor between state and federal courts.  Id. 125 S. Ct. at
2367.  Stated another way, courts
must inquire whether a federal forum may entertain the state claim raising a
disputed, substantial federal issue without disturbing any congressionally
approved balance of federal and state judicial responsibilities.  Id. at 314, 125 S.
Ct. at 2368.  When Congress has
not provided a federal, private remedy for the violation of a particular
federal statute, the presence of an issue concerning that statute as an element
of a state tort claim is not ordinarily considered Asubstantial@
enough to confer federal question jurisdiction. 
See Franchise Tax Bd., 463 U.S. at 21B22,
103 S. Ct. at 2852 (holding federal question jurisdiction did not exist over a
declaratory judgment suit brought by state taxing authorities concerning the
application of a state statute to an ERISA qualified
trust); see also Merrell Dow Pharms. Inc. v. Thompson,
478 U.S. 804, 814, 106 S. Ct. 3229, 3235 (1986) (holding federal question
jurisdiction did not exist over state tort claim that pharmaceutical company
had misbranded drug Bendectin in violation of Federal
Food, Drug, and Cosmetic Act).

IV.  SECTION 1338 JURISDICTION
OVER MINTON=S LEGAL MALPRACTICE CLAIM

A.  Minton=s
Well-Pleaded Complaint

Starting
with a well-pleaded complaint analysis, Minton=s
petition does establish that his right to relief in his state legal malpractice
suit necessarily depends on resolution of a substantial question of federal
patent law.  See Christianson, 486
U.S. at 809, 108 S. Ct. at 2174.  As Appellees and the Majority Opinion acknowledge, to prevail in his legal malpractice claim, Minton must prove
a Asuit
within a suit.@  See Alexander v. Turtur
Assocs., Inc., 146 S.W.3d 113, 117 (Tex. 2004)
(articulating suit within a suit requirement). 
That is, to prevail when the asserted legal malpractice involves the
results of prior litigation, the plaintiff bears the additional burden of proving
that, Abut
for@ the
attorney=s
breach of duty, he would have won in the underlying litigation and would have
been entitled to judgment.  See, e.g.,
Schlager v. Clements, 939 S.W.2d
183, 186B87
(Tex. App.CHouston
[14th Dist.] 1996, writ denied).








 Turning specifically to Minton=s
original pleading, he asserted one cause of action against AppelleesCnegligence.  He asserted as the sole basis for his
negligence pleading one theory of negligence by AppelleesCthe
failure to timely plead and brief the experimental use exception in response to
Appellees=
assertion of the on sale bar rule.  Thus,
in his state legal malpractice claim, Minton must prove that Abut
for@ Appellees=
alleged negligence, he would have prevailed on every element of his patent
infringement suit against NASD and NASDAQ, including application of the
experimental use exception to the on sale bar rule and damages from NASD and
NASDAQ=s
alleged infringement and continued infringement of claims 1, 2, 3, and 4 of the
=643
Patent.

B.  A Disputed, Substantial Issue of Federal
Patent Law








When
a state legal malpractice claim requires the hypothetical adjudication of the
merits of an underlying federal patent infringement lawsuitCthat
is, trial of the patent infringement suit within the legal malpractice suitCthe
legal malpractice case presents a disputed, substantial question of federal
patent law conferring Section 1338 jurisdiction on the federal courts.  See, e.g., Air Measurement Techs.,
Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262, 1272B73
(Fed. Cir. 2007)[4]
(holding federal courts possessed exclusive Section 1338 jurisdiction over
Texas state legal malpractice claim stemming from underlying federal patent
infringement suit); Immunocept, LLC v.
Fulbright & Jaworski, LLP, 504 F.3d 1281, 1284 (Fed. Cir. 2007) (same,
stemming from underlying claims for patent infringement, comparison of patent
application, and patent scope). 
That is, when the plaintiff must plead and prove his entire underlying
patent infringement suit to satisfy the Abut
for@
causation requirement of his state legal malpractice claim, the state legal
malpractice claim presents a disputed, substantial issue of federal patent
law.  See AMT, 504 F.3d at 1272 (explaining that Apatent
infringement is disputed, for there is no concession by Akin Gump that the
[defendants] infringed AMT=s
patents, and the issue is substantial, for it is a necessary element of the
malpractice case@); Immunocept,
504 F.3d at 1285 (holding that A[b]ecause it is the sole basis of [plaintiff=s
state law legal malpractice claim], the claim drafting error is a necessary
element of the malpractice cause of action@ and
triggers Section 1338 jurisdiction). 
Numerous courts have followed the holdings of AMT and Immunocept; federal courts have denied motions to
remand state legal malpractice claims stemming from underlying patent
litigation and state courts have dismissed such actions, holding Section 1338
jurisdiction existed.[5]








In
summary, it is clear from Minton=s
legal malpractice pleading that his right to recover from Appellees
in his legal malpractice suit will be defeated by one construction or sustained
by the opposite construction of the patent laws concerning the on sale bar
rule, concerning the experimental use exception, and ultimately concerning NASD=s
and the NASDAQ=s
alleged infringement to claims 1, 2, 3 and 4 of the =643 Patent.[6]  See Christianson, 486 U.S. at 809, 108
S. Ct. at 2174.  Minton pleaded no
alternative Atheories@ of
recovery in his legal malpractice suitCthe
sole allegation of negligence against Appellees is
that in Minton=s
patent infringement suit they negligently failed to plead and brief the
experimental use exception after NASD and NASDAQ moved for summary judgment on
the basis of the on sale bar rule.  Thus,
application of the well-pleaded complaint doctrine and examination of whether
Minton=s
right to relief in his state legal malpractice suit necessarily depends on
resolution of a substantial question of federal patent law both compel the
conclusion that  Minton=s
state legal malpractice claim raises a disputed, substantial issue of federal
patent law.  See AMT, 504 F.3d at 1269 (holding, A[b]ecause proof of patent infringement is necessary to show
AMT would have prevailed in the prior litigation, patent infringement is a >necessary
element= of
AMT=s
malpractice claim and therefore apparently presents a substantial question of
patent law conferring ' 1338 jurisdiction@); Immunocept, 504 F.3d at
1285 (recognizing Aa determination of patent
infringement serves as the basis of '
1338 jurisdiction over related state law claims@); see
also Christianson, 486 U.S. at 809, 108 S. Ct. at 2174; accord Marsh v.
Austin-Fort Worth Coca-Cola Bottling Co., 744 F.2d
1077, 1079 (5th Cir. 1984) (holding Court of Appeals for the Federal Circuit
possessed exclusive jurisdiction over summary judgment granted by federal
district court for defendants on the basis that plaintiff Alost
his patent rights@ under 35 U.S.C. ' 102Cthe
on sale bar ruleCby displaying his invention
at a convention before he applied for a patent even though plaintiff asserted
state law claims and filed in federal court based on diversity of citizenship).

C.  Disagreement with the Majority Opinion=s
Federal Question Analysis








The
Majority Opinion holds that in Minton=s
legal malpractice claim Athe federal issue is
insubstantial.@  To reach this holding, despite the plethora
of case law specifically addressing Section 1338 jurisdiction in state claims
alleging legal malpractice during federal patent litigation,[7]
the Majority Opinion chooses to follow Singh v. Duane Morris, L.L.P, 538 F.3d 334, 338 (5th
Cir. 2008).  Singh is a Fifth
Circuit case in which legal malpractice was alleged to have occurred during trademark
litigation.  Id.  The Singh opinion itself limited its
holding to Section 1338 jurisdiction in suits alleging malpractice during trademark
litigation and expressly declined to extend its holding to suits alleging
malpractice during patent litigation. 
The Fifth Circuit stated,

It is possible that the federal interest in
patent cases is sufficiently more substantial, such that it might justify
federal jurisdiction.  But we need not
decide the question before the Federal Circuit [in AMT], because it is
not before us.  We conclude only that
jurisdiction does not extend to malpractice claims involving trademark suits
like this one.

 

Id. at
340.  I cannot agree
with the Majority Opinion that the Singh opinion, having expressly
declined to extend its holding to malpractice claims involving patent suits,
has any application to the Section 1338 jurisdictional analysis of Minton=s
malpractice claim involving a patent suit.

D.  Federalism Analysis








A
determination that a state law claim presents a disputed, substantial issue of
federal patent law does not end a Section 1338 jurisdictional query.  Grable, 545 U.S. at 314, 125 S. Ct. at 2367.  As previously mentioned, courts must also
examine whether federal court jurisdiction over a state claim implicating a
substantial question of federal law is consistent with congressional judgment
regarding the proper division of labor between state and federal courts.  Id. at 314, 125 S.
Ct. at 2368.

Moving
to the required examination of whether a federal court=s
exercise of subject matter jurisdiction over Minton=s
state legal malpractice claim is consistent with congressional judgment
regarding the proper division of labor between state and federal courts, the
answer is clearly that it is.  See id.
at 314, 125 S. Ct. at 2368.  As recognized by the Court of Appeals for the
Federal Circuit in determining that Section 1338 jurisdiction existed over a
Texas legal malpractice claim stemming from an underlying patent infringement
suitClike
Minton=s,








There is a strong federal interest in the
adjudication of patent infringement claims in federal court because patents are
issued by a federal agency.  The
litigants will also benefit from federal judges who have experience in claim
construction and infringement matters.  See
Grable, 545 U.S. at 315, 125 S. Ct. 2363; see
also Lacks Indus., Inc. v. McKechnie Vehicle Components
USA, Inc., 322 F.3d 1335, 1341 (Fed. Cir. 2003)
(stating that patent infringement involves a two-step process where the court
first determines the scope and meaning of the asserted claims and then compares
the construed claims to the accused product). Under these circumstances, patent
infringement justifies Aresort to the
experience, solicitude, and hope of uniformity that a federal forum offers on
federal issues.@  Grable, 545 U.S. at 312, 125 S. Ct. 2363.  In ' 1338, Congress considered the federal-state
division of labor and struck a balance in favor of this court=s entertaining patent
infringement.  For us to conclude
otherwise would undermine Congress=s expectations.


AMT,
504 F.3d at 1272.  Likewise, in Immunocept,
the Court of Appeals for the Federal Circuit reiterated that Congress=s
intent to remove non-uniformity in patent law, as evidenced by its enactment of
the Federal Courts Improvement Act of 1982, was further indicium
that Section 1338 jurisdiction existed over a Texas state legal malpractice
claim stemming from attorneys=
alleged negligent claim drafting in a patent application.  504 F.3d
at 1285.  For the reasons
articulated in the AMT and the Immunocept
opinions, by enacting Section 1338, Congress considered the federal-state
division of labor and struck a balance in favor of the federal courts for
patent infringement issues.  AMT, 504 F.3d at 1272; Immunocept, 504 F.3d at
1285.








Minton=s
state suit, unlike the state litigation Franchise Tax Board and Merrell
Dow Pharmaceutical, Inc., is not based on a violation of a federal statute
for which Congress has provided no private federal remedy.  See Franchise Tax Bd., 463 U.S.
at 21B22,
103 S. Ct. at 2852 (ERISA); Merrell Dow Pharms. Inc.,
478 U.S. at 814, 106 S. Ct. at 3235 (FDCA).  Minton=s
suit is based on alleged malpractice during the pursuit of an authorized,
private, exclusively federal remedy for patent infringement.  See 28 U.S.C.A.
'
1338(a) (granting federal district courts exclusive jurisdiction over patent
cases).  In fact, Minton must prove his
entire private, federal cause of action for patent infringement as an element
of his state law claim.  Thus, a
federalism analysis of Minton=s
state legal malpractice claim weighs in favor of the congressional intent
expressed in Section 1338 that federal courts exercise original, exclusive
jurisdiction over patent infringement issues. 
See AMT, 504 F.3d at
1272; Immunocept, 504 F.3d at 1285.

E.  Disagreement with the Majority Opinion=s
Federalism Analysis

The
Majority Opinion holds that Athe
exercise of federal jurisdiction over this [Minton=s]
state-law malpractice claim would disturb the balance between federal and state
judicial responsibilities.@  Majority Op. at 13.  In reaching this conclusion, the Majority
Opinion expressly declines to follow AMT=s
and Immunocept=s
federalism analysis for three reasons. 
First, the Majority Opinion chooses to give no precedential value to the
jurisdictional determinations of the Court of Appeals for the Federal
Circuit.  Second, the Majority Opinion
claims that in both AMT and Immunocept,
the Court of Appeals for the Federal Circuit Amisapplied
United States Supreme Court precedent by disregarding the federalism analysis
that the Supreme Court has applied to restrict the scope of federal >arising
under jurisdiction.=@  Majority Op. at 14B15.  And third, the Majority Opinion summarily
concludes that application of the on sale bar rule and the experimental use
exception in Minton=s state legal malpractice
suit are fact-bound and situation-specific issues.  I cannot agree with any of these
propositions.








Concerning
the precedential value to be given the jurisdictional determinations of the
Court of Appeals for the Federal Circuit, the Majority Opinion cites Penrod Drilling Corp. v. Williams, 868 S.W.2d 294 (Tex. 1993), in support of its decision to give
no precedential value to AMT=s
and Immunocept=s
federalism analysis.  Penrod
Drilling, however, does not support the Majority Opinion=s
position.  Penrod
Drilling actually holds that a court of appeals erred by following Fifth
Circuit precedent and by summarily disregarding all contrary federal authority,
just as the Majority Opinion here does by following the Fifth Circuit=s Singh
decision and disregarding contrary federal authority.  Majority Op. at 11B15; see
Singh, 868 S.W.2d at 296B97.








Concerning
the Majority Opinion=s conclusion that in both AMT
and Immunocept the Court of Appeals for the
Federal Circuit Amisapplied United States
Supreme Court precedent by disregarding the federalism analysis that the
Supreme Court has applied [in Grable and Empire
Healthchoice Assurance, Inc. v. McVeigh[8]] to restrict the scope
of federal >arising
under jurisdiction,=@ I
simply cannot agree.  Both AMT and
Immunocept were decided in 2007 after Grable and Empire.  See Grable,
545 U.S. at 308, 125 S. Ct. at 2363 (decided in 2005); Empire, 547 U.S.
at 677, 126 S. Ct. at 2136B37
(decided in 2006).  Moreover, as
set forth above, both AMT and Immunocept
actually cite Grable and expressly discuss the
federalism analysis required by Grable and Empire.  See AMT, 504 F.3d at 1272; Immunocept,
504 F.3d at 1285. 
The Majority Opinion does not posit exactly how the federalism analysis
of the Court of Appeals for the Federal Circuit is purportedly deficient in AMT
and in Immunocept; no deficiency is apparent
to me.








In
conducting the required federalism analysis in AMT, the Court of Appeals
for the Federal Circuit expressly recognized Aa
strong federal interest in the adjudication of patent infringement claims in
federal court because patents are issued by a federal agency.@  AMT, 504 F.3d
at 1272; see also Immunocept, 504 F.3d at 1285.  The
Court of Appeals for the Federal Circuit explained that A[t]he
litigants will also benefit from federal judges who have experience in claim
construction and infringement matters.@  AMT, 504 F.3d
at 1272 (citing Grable, 545 U.S. at 315, 125
S. Ct. at 2363); see also Immunocept, 504 F.3d at 1285 (citing Grable
and explaining, ALitigants will benefit from
federal judges who are used to handling these complicated rules@).  The Court of Appeals for the Federal Circuit
explicitly stated that a state claim requiring proof of patent infringement
justifies Aresort
to the experience, solicitude, and hope of uniformity that a federal forum
offers on federal issues.@  AMT, 504 F.3d
at  1269; see also Immunocept,
504 F.3d at 1285 (recognizing that the intent of
Congress to remove non-uniformity in the patent laws via the enactment of the
Federal Courts Improvement Act of 1982 is a further indication of federal
question jurisdiction in a state legal malpractice suit requiring the proof of
an entire underlying patent infringement lawsuit).  The Court of Appeals for the Federal Circuit
noted that A[i]n ' 1338, Congress considered
the federal-state division of labor and struck a balance in favor of this court=s
entertaining patent infringement.@  AMT, 504 F.3d at 1272; Immunocept,
504 F.3d at 1286. 
Finally, the Court of Appeals for the Federal Circuit in AMT held
that A[f]or
us to conclude otherwise would undermine Congress=s
expectations.@  AMT,  504
F.3d at 1272. 
Thus, the Court of Appeals for the Federal Circuit in AMT and in Immunocept did conduct the required federalism
analysis and reached the exact opposite conclusion of the Majority Opinion=s
holding that Athe
exercise of federal jurisdiction over this state-law malpractice claim would
disturb the balance between federal and state judicial responsibilities.@  Majority Op. at 13.  The Court of Appeals for the Federal Circuit
held that the exercise of state jurisdiction over a state legal
malpractice claim like Minton=s
requiring a Atrial
within a trial@ of
the underlying patent infringement suit would disturb the congressionally
mandated balance between federal and state judicial responsibilities.  See AMT, 504 F.3d at 1272; Immunocept,
504 F.3d at 1285-86.








Finally,
the Majority Opinion holds that Section 1338 jurisdiction is not triggered
because application of the on sale bar rule and the experimental use exception
in Minton=s
legal malpractice claim are Afact-bound
and situation-specific@ issues.  Majority Op. at 15 (citing Empire, 547
U.S. at 699B701,
126 S. Ct. at 2136).  The Afact-bound
and situation-specific@ aspect of the Majority
Opinion=s
analysis is clearly incorrect.  It puts
the cart before the horse; a court cannot look past the jurisdictional issue,
examine the merits of state court summary judgment evidence, decide that issues
are fact-bound and situation-specific, and then use its decision on the merits
to retroactively defeat Section 1338 jurisdiction.  Instead, as outlined above, Section 1338
jurisdiction is to be determined based on the well-pleaded complaint doctrine
and a federalism analysis, not on summary judgment evidence or non-evidence or
the fact that the case was subsequently disposed of by summary judgment.  See Lockwood, 93 Cal. Rptr. 3d at 228B29
(explaining that trial court should have dismissed for lack of subject matter
jurisdiction, not granted summary judgment, and rejecting defense=s
argument that these two outcomes are equivalent).  For these reasons, I cannot agree with the
Majority Opinion=s federalism analysis.








V.  CONCLUSION

I
would hold that the federal courts possess Section 1338 jurisdiction over
Minton=s
state legal malpractice suit that requires proof of every element of his
underlying patent infringement suit.  I
would grant Minton=s motion to dismiss, vacate
the trial court=s order granting summary
judgment for Appellees, and remand the case to the
trial court for disposition in accordance with this opinion.

 

SUE WALKER

JUSTICE

 

DELIVERED:
October 8, 2009











[1]Pfaff v. Wells Elecs., Inc., 525 U.S.
55, 67, 119 S. Ct. 304, 311B12 (1998); Electromotive Div. of Gen. Motors Corp.
v. Transp. Sys. Div. of Gen. Elec. Co., 417 F.3d
1203, 1209 (Fed. Cir. 2005).  The on sale bar is statutorily grounded in 35
U.S.C. ' 102(b), which states:

 

A person shall be entitled to a patent unlessC

. . . . 

(b)     the invention was . . . on sale in this country, more than
one year prior to the date of the application for patent in the United States .
. . .

 

35 U.S.C.A.
' 102(b) (2001).





[2]Baker Oil Tools, Inc. v. Geo Vann, Inc., 828 F.2d 1558, 1563 (Fed. Cir. 1987).





[3]See, e.g., Pfaff,
525 U.S. at 67, 119 S. Ct. at 311; Electromotive, 417 F.3d at 1209; Paragon Podiatry Lab., Inc. v. KLM Labs.,
Inc., 984 F.2d 1182, 1188 (Fed. Cir. 1993) (per curiam).





[4]See, e.g., Electromotive, 417 F.3d
at 1210.





[5]See EZ Dock v. Schafer Sys.,
Inc., 276 F.3d
1347, 1351B52 (Fed. Cir. 2002); see also Petrolite
Corp. v. Baker Hughes Inc., 96 F.3d 1423, 1426
(Fed. Cir. 1996) (AExperimental use is a question of law to be analyzed
based on the totality of the surrounding circumstances.@).





[6]See, e.g., Pfaff, 525 U.S. at 67, 119 S. Ct. at 311; Electromotive,
417 F.3d at 1213.





[7]Allen Eng=g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1354 (Fed.
Cir. 2002); Scaltech Inc. v. Retec/Tetra, L.L.C., 178 F.3d 1378, 1384 n.1 (Fed. Cir. 1999).





[8]Allen Eng=g, 299 F.3d at 1354.





[9]Scaltech, 178 F.3d at 1384 n.1.





[10]See Minton v. Nat=l Ass=n of Sec. Dealers, Inc., 336 F.3d 1373, 1379 (Fed.
Cir. 2003) (noting that the district court likely denied Minton=s motion
for reconsideration without considering the newly-raised experimental use
defense because it denied Minton=s motion Atersely@ and Afor the reasons previously set forth in the court=s
memorandum opinion@).





[11]Id. at 1374, 1381.





[12]Id. at 1379.





[13]See Tex. R.
Civ. P. 166a(c), (i).





[14]Appellees filed two joint motions, each seeking no-evidence and
traditional summary judgments.  The
second joint motion was filed in response to Minton=s first
amended original petition, which added a new damages theoryCthat
Minton would have settled the Patent Litigation for at least $100,000,000.00 if
his claims in that suit had not been dismissed on summary judgment under the on
sale bar.  Minton=s
response to the second joint motion offered no new argument or evidence, but
merely incorporated by reference his briefing and evidence filed in response to
appellees= first joint summary judgment motion.  The trial court granted the relief sought in
both joint motions.





[15]Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262 (Fed. Cir. 2007)
(holding that state law claim for legal malpractice involving prior patent law
litigation Aarises under@ federal law); Immunocept,
LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281 (Fed. Cir. 2007) (same).





[16]Scherbatskoy v. Halliburton Co., 125 F.3d 288 (5th Cir. 1997) (holding that
an action arises under federal patent law, conferring exclusive federal
jurisdiction, when resolution of state claims for breach of contract and
fiduciary duty depends on application of federal patent laws).





[17]Williams v. Briscoe, 137 S.W.3d 120, 124 (Tex. App._Houston [1st Dist.] 2004, no pet.).





[18]Alexander v. Turtur
& Assocs., Inc., 146 S.W.3d 113, 117 (Tex. 2004).





[19]Christianson v. Colt Indus.
Operating Corp., 486 U.S. 800, 809,
108 S. Ct. 2166, 2174 (1988).





[20]Grable & Sons Metal Prods., Inc. v. Darue
Eng=g & Mfg.,
545 U.S. 308, 314, 125 S. Ct. 2363, 2368 (2005); see Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 813_14, 106 S. Ct. 3229, 3234_35 (1986).





[21]Grable, 545 U.S. at 314, 125 S. Ct. at
2368.





[22]Singh v. Duane Morris LLP, 538 F.3d 334, 338 (5th
Cir. 2008).





[23]Grable, 545 U.S. at 312, 125 S. Ct. at
2367.





[24]Singh, 538 F.3d at 339; see also Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996).





[25]Singh, 538 F.3d at 340.





[26]Our holding should not be construed as suggesting that
no legal malpractice claims involving patent litigation could possibly arise
under federal law.  In fact, it is
possible that the federal interest in other legal malpractice cases would be
sufficiently more substantial, such that federal jurisdiction would be
justified.  We hold only that federal
jurisdiction does not extend to the legal malpractice claim before us.





[27]Penrod Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex.
1993) (emphasis omitted); see also City of Carrollton v. Singer,
232 S.W.3d 790, 797 n.6
(Tex. App._Fort Worth 2007, pet. denied).





[28]See, e.g., Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699B701, 126 S. Ct. 2121, 2136_37 (2006).





[29]Id. at 701, 126 S. Ct. at 2137.  Minton=s
reliance on the Fifth Circuit=s opinion in Scherbatskoy
is misplaced for similar reasons.  Scherbatskoy is distinguishable on the facts
and was decided prior to the more recent United States Supreme Court decisions
that adopted the federalism analysis that governs our decision here.  Compare Scherbatskoy,
125 F.3d at 291 (finding federal Aarising
under@ jurisdiction in breach of contract claim based solely
on the conclusion that the patent issue Ais a necessary element@ to the resolution of the claim) with Empire,
547 U.S. at 701, 126 S. Ct. at 2137 (A[I]t takes more than a federal element >to
open the arising under door.=@) and
Grable, 545 U.S. at 313B14, 125
S. Ct. at 2367 (A[T]he federal issue will ultimately qualify for a
federal forum only if federal jurisdiction is consistent with congressional
judgment about the sound division of labor between state and federal courts.@).





[30]Tex. R. Civ. P. 166a(c);
Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211,
215 (Tex. 2002); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).





[31]Sw. Elec. Power Co., 73 S.W.3d at 215.





[32]Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex.
2005).





[33]Great Am. Reserve Ins. Co. v. San
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).





[34]IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex.
2004).





[35]Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995).





[36]Tex. R. Civ. P. 166a(i).





[37]Id.





[38]Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).





[39]See Tex. R.
Civ. P. 166a(i) & cmt.;
Sw. Elec. Power Co., 73 S.W.3d at 215.





[40]Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex.
2006).





[41]Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex.
App.CSan Antonio 1998, pet. denied).





[42]Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (citing City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005)).





[43]Electromotive,
417 F.3d at 1211 (AIt is important to recognize that this court has
limited experimentation sufficient to negate a pre-critical date public use or
commercial sale to cases where the testing was performed to perfect claimed
features, or, in a few instances like the case here, to perfect features
inherent to the claimed invention.@); W. Marine Elecs., Inc.
v. Furuno Elec. Co., 764 F.2d
840, 847 (Fed. Cir. 1985) (AThe trial court properly recognized that testing or
experimentation performed with respect to non‑claimed
features of the device does not show that the invention was the subject
of experimentation.A); In re Theis, 610 F.2d 786, 793 (C.C.P.A. 1979) (AIt is
settled law that the experimental sale exception does not apply to experiments
performed with respect to nonclaimed features of an
invention.@).





[44]Gould Inc. v. United States, 579 F.2d 571, 582 (Ct. Cl.
1978); see also Honeywell Int=l.
Inc. v. Universal Avionics Sys. Corp.,
488 F.3d 982, 998 (Fed. Cir. 2007).





[45]EZ Dock, 276 F.3d at 1351B53; see also Kolmes v.
World Fibers Corp., 107 F.3d 1534, 1540 (Fed.
Cir. 1997); Manville Sales Corp. v. Paramount Sys.,
Inc., 917 F.2d 544, 551 (Fed. Cir.
1990).





[46]Minton asserts that the trial court committed error by
using this standard because experimental use is supported by any testing needed
to convince the inventor that the invention is capable of performing its
intended purpose in its intended environment. 
See Gould, 579 F.2d
at 583.  Testing, however, only
supports experimental use in instances where it expressly or inherently relates
to a claimed feature.  See, e.g., Kolmes, 107 F.3d at 1540
(holding testing for durability established experimental use because, based on Athe
preamble of claim 1 [of the patent],@ an Ainherent feature@ of the invention is Athe ability to withstand use in an environment such as
a meat-packing plant with repeated laundering@); Gould, 579 F.2d at
582 (holding experimental use exception did not apply where Athe work
done was not directed toward the invention covered by the claims in suit, the
overall engine configuration, but was directed toward scaling-up [increasing
the output horsepower of] the engine and checking and adjusting the performance
of component parts@). Additionally, there is no probative value to an inventor=s
subjective characterizations of an offer for sale as experimental when
first expressed only after a patent infringement action has been filed.  See, e.g., Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d
1359, 1370 (Fed. Cir. 2007); Electromotive, 417 F.3d
at 1212; D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d
1144, 1150 (Fed. Cir. 1983) (A[I]f a mere allegation of experimental intent were
sufficient, there would rarely if ever be room for summary judgment based on a
true >on sale= defense under 35 U.S.C. ' 102(b).@).  Subjective assertions of experimental use in
Minton=s deposition and affidavit testimony generated in the
Patent Litigation, including his affidavit testimony that the primary purpose
of the TEXCEN Lease was Ato be
able to test and further develop the program,@ are not evidence of experimental use absent
supporting objective relevant evidence predating the Patent Litigation.





[47]>643 Patent, col. 7, ll. 25B28.





[48]Id. at col. 7, ll. 20, 24B25.





[49]If there is no evidence that the TEXCEN
Lease had an experimental purpose, then the lease could not have been Aprimarily@
experimental in purpose so as to negate the on sale bar.





[50]See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex.
1996) (when trial court grants summary judgment on fewer than all grounds
asserted, appellate court may affirm summary judgment on other grounds properly
raised in the trial court).





[51]Electromotive, 417 F.3d at 1210; Allen
Eng=g Corp., 299
F.3d at 1354.





[52]Allen Eng=g Corp., 299
F.3d at 1353; see also Electromotive,
417 F.3d at 1210.





[53]Electromotive, 417 F.3d at 1214.





[54]In re Dybel, 524 F.2d 1393, 1401 (C.C.P.A. 1975); see also Paragon Podiatry Lab., 984 F.2d at 1186.





[55]In re Dybel, 524 F.2d at 1401.





[56]See, e.g., Lough v.
Brunswick Corp., 86 F.3d 1113, 1120 (Fed. Cir. 1996), cert. denied, 522
U.S. 806 (1997); In re Hamilton, 882 F.2d
1576, 1581 (Fed. Cir. 1989).





[57]Allen Eng=g Corp., 299
F.3d at 1354; see also Scaltech,
178 F.3d at 1384 n.1 (ACommercial
exploitation, if not incidental to the primary purpose of experimentation, will
result in an on sale bar, even if the invention was still in its experimental
stage.@).





[58]See, e.g., Cargill, 476 F.3d at 1370; Electromotive, 417
F.3d at 1212, 1214; Petrolite,
96 F.3d at 1427; Paragon Podiatry Lab., 984 F.2d at 1186; Sinskey
v. Pharmacia Ophthalmics, Inc., 982 F.2d 494, 499 (Fed. Cir. 1992), cert. denied, 508
U.S. 912 (1993); LaBounty Mfg., Inc. v.
United States Int=l
Trade Comm=n, 958 F.2d 1066, 1071_72 (Fed. Cir. 1992); D.L. Auld Co., 714 F.2d
at 1150.





[59]In light of these holdings, we need not reach Minton=s other
issues or appellees= cross-point.  See
Tex. R. App. P. 47.1.





[1]Minton alleged that NASD and NASDAQ have Ainfringed
and continued to infringe claims 1, 2, 3 and 4@ of U.S. Patent No. 6,014,643 (the =643
Patent).





[2]Hereinafter referred to as ASection
1338.@





[3]See also Univ. Of W. Va. Bd. of Trs.
v. VanVoorhies,
278 F.3d 1288, 1295 (Fed. Cir. 2002) (holding Section
1338 jurisdiction existed over state law claim alleging breach of duty to
assign a patent because claim required resolution of the disputed patent
application); U.S. Valves, Inc. v. Dray, 212 F.3d
1368, 1372 (Fed. Cir. 2000) (holding Section 1338 jurisdiction existed over
state law breach of contract claim requiring proof of patent infringement); Hunter
Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d
1318, 1329 (Fed. Cir. 1998) (holding Section 1338 jurisdiction existed over
state law claim of injurious falsehood when plaintiff was required to prove
invalidity of patent), overruled in part on other grounds by Midwest
Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358B59 (Fed. Cir. 1999), and cert. denied, 525 U.S.
1143 (1999); Scherbatskoy v. Halliburton Co.,
125 F.3d 288, 291 (5th Cir. 1997) (holding Section
1338 jurisdiction existed over state law breach of contract claim when
plaintiff was required to prove patent infringement); Additive Controls
& Measurement Sys., Inc. v. Flowdata, Inc.,
986 F.2d 476, 477B78 (Fed. Cir. 1993) (holding Section 1338 jurisdiction
existed over state law business disparagement claim that required proof of
patent non-infringement).





[4]Hereinafter referred to as AAMT.@





[5]See, e.g., Tomar Elecs., Inc. v.
Watkins, No. 2:09-cv-00170-PHX-ROS,
2009 WL 2222707, at *1B2 (D. Ariz. July 23, 2009) (order on motion to remand)
(holding federal courts possessed exclusive Section 1338 jurisdiction over
state law legal malpractice stemming from patent infringement suit); see
also, e.g., LaBelle v. McGonagle,
No. 07-12097-GAO, 2008 WL 3842998, at *2B4 (D. Mass. Aug. 15, 2008) (opinion and order, not
reported) (same, stemming from negligent failure to file patent application); Byrne
v. Wood, Herron & Evans, LLP, No. 2: 08-102-DCR,
2008 WL 3833699, at *4B5 (E.D. Ky. Aug. 13, 2008) (mem. op. and order, not reported) (holding federal courts
possessed exclusive Section 1338 jurisdiction over state legal malpractice
claim stemming from patent infringement suit); Lockwood v. Sheppard, Mullin,
Richter & Hampton, 93 Cal. Rptr. 3d 220, 228B29 (Cal. Ct. App. 2009) (holding federal courts
possessed exclusive Section 1338 jurisdiction over state law claims stemming
from opposing attorney=s alleged action in obtaining patent reexamination); TattleTale Portable Alarm Sys. v. Calfee, Halter & Griswold, L.L.P.,
No. 08AP-693, 2009 WL 790314, at *4B5 (Ohio
Ct. App. Mar. 26, 2009) (holding federal courts possessed exclusive Section
1338 jurisdiction over state law legal malpractice claim stemming from failure
to pay patent maintenance fees or to seek revival of patent).





[6]Both the on sale bar rule and the experimental use
exception to the application of the on sale bar rule are part and parcel of
Minton=s patent infringement lawsuit.  See 35 U.S.C.A.
' 102(b); Allen Eng=g
Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1353 (Fed. Cir. 2002).  They are not stand-alone doctrines or claims
that may be plucked from a federal patent infringement lawsuit and, somehow, not
present substantial issues of federal patent law when a patent infringement
lawsuit itself presents a substantial question of federal patent law triggering
Section 1338 jurisdiction.  See 28
U.S.C.A. ' 1338(a) (providing exclusive, original federal
court jurisdiction over Aany civil action arising under any Act of Congress
relating to patents@); AMT, 504 F.3d at
1270 (recognizing that in the case-within-a-case context the on sale bar rule
is Anot the sort of jurisdiction defeating defense[]
contemplated by Christianson@).





[7]See, e.g., AMT,
504 F.3d at 1272; Immunocept,
504 F.3d at 1285; see also Tomar Elecs., Inc.,
2009 WL 2222707, at *1B2; LaBelle, 2008 WL
3842998, at *2B4; Byrne, 2008 WL 3833699, at*4B5; TattleTale Portable Alarm Sys., 2009 WL
790314, at *4B5.





[8]547 U.S. 677, 699B701, 126
S. Ct. 2121, 2137B37 (2006).