# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-20321

ROBIN SINGH, Doing Business as Testmasters,

Plaintiff-Appellant,

v.

DUANE MORRIS LLP; RICHARD T. REDANO,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge.

Robin Singh sued Duane Morris LLP and attorney Richard Redano (jointly "Redano") for malpractice allegedly committed during Redano's representation of Singh in a federal trademark lawsuit. Because the federal courts lack subject matter jurisdiction over this malpractice action, we vacate the judgment and render a judgment of dismissal.

## I.

This case arises out of a dispute between two test-prep companies over use of the name "Testmasters." Singh, who owned a California-based test-prep company, and Test Masters Educational Services, Inc. ("TES"), a Texas-based company, sued in federal court, asserting various trademark claims against each other. Redano represented Singh. After a five-day trial, a jury found that Singh's mark was descriptive and that he had established secondary meaning in the "Testmasters" mark. The jury also found that TES had infringed Singh's mark but was not liable, because it had been an innocent prior user. Both parties appealed, and we reversed, holding that Singh had presented "little or no evidence regarding secondary meaning." Test Masters Educ. Servs., Inc. v. Singh, No. 01-20659, 2002 U.S. App. LEXIS 16896, at *15 (5th Cir. July 24, 2002) (per curiam) (unpublished).[1]

Singh filed this malpractice suit against Redano in Texas state court, claiming that Redano had mistakenly failed at trial to introduce available evidence that would have successfully established secondary meaning. Redano removed to federal court, basing federal jurisdiction on the contention that the outcome of the malpractice case depended on resolving questions of federal trademark law.

The district court, Judge Vanessa Gilmore presiding, denied Singh's motion to remand, concluding that it had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and the All Writs Act, 28 U.S.C. § 1651. The court granted in part Redano's motion for summary judgment and dismissed Singh's malpractice claims. The court held that collateral estoppel bars Singh's malprac-

---

[1] In two subsequent suits, Singh unsuccessfully sought to establish secondary meaning in the "Testmasters" mark. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559 (5th Cir. 2005) (holding that Singh was precluded from re-litigating issue of secondary meaning); Robin Singh Educ. Servs. Inc. v. Excel Test Prep Inc., No. 06-20951, 2008 U.S. App. LEXIS 8178 (5th Cir. Apr. 16, 2008) (per curiam) (unpublished) (same).

tice claims and that Singh's claims are precluded by his failure to file a Federal Rule of Civil Procedure 60(b) motion with additional secondary meaning evidence after the trademark trial had been concluded.

II.

We review de novo the district court's assumption of subject matter jurisdiction. Local 1351 Int'l Longshoremens Ass'n v. Sea-Land Serv., Inc., 214 F.3d 566, 569 (5th Cir. 2000). Pursuant to 28 U.S.C. §§ 1331 and 1338(a), federal courts have subject matter jurisdiction over civil actions "arising under" federal law and specifically over actions "arising under any Act of Congress relating to . . . trademarks." We must decide whether a state-law malpractice claim "arises under" federal law merely because the alleged malpractice occurred in a prior federal trademark suit. We conclude that such claim does not arise under federal law and does not confer subject matter jurisdiction under § 1331 or 1338(a).

Singh sued Redano in state court on a state-law cause of action. Having removed the case to federal court, Redano contends that federal jurisdiction is proper because resolving the malpractice claim necessarily requires resolving a federal questionSSto-wit, whether Singh could have established secondary meaning in his trademark.

Under Texas law, "[w]hen a legal malpractice claim arises from earlier litigation, the plaintiff . . . bears the burden to prove he would have prevailed on the underlying cause of action." Williams v. Briscoe, 137 S.W.3d 120, 124 (Tex. App. SSHouston [1st Dist.] 2004, no writ). That rule, which is necessary to satisfy the causation element of a malpractice claim, has been dubbed the "suit within a suit" requirement: "[T]he plaintiff must establish that the underlying suit would have been won 'but for' the attorney's breach of duty . . . ." Ballesteros v. Jones, 985 S.W.2d 485, 489 (Tex. App.SSSan Antonio 1998, pet. denied). Hence, Singh must prove there was sufficient evidence of secondary meaning such that he

could have established secondary meaning in his prior federal trademark suit.

A federal question exists "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."[2]  Redano seizes on the necessary-resolution language of Franchise Tax Board, observing that the "suit within a suit" requirement of Singh's Texas malpractice claim necessarily raises a federal question.  But the Supreme Court has subsequently warned that Franchise Tax Board's necessary-resolution language should be read as part of a carefully nuanced standard rather than a broad and simplistic rule.

The fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction:  "Franchise Tax Board . . . did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 813 (1986).  Likewise, "the presence of a disputed federal issue . . . [is] never necessarily dispositive."  Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  Instead, "[f]ar from creating some kind of automatic test, Franchise Tax Board thus candidly recognized the need for careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction."  Merrell Dow, 478 U.S. at 814.

If, however, the standard for federal question jurisdiction is no "automatic test," what sort of test is it?  Although the Court's answer has at times been less

---

[2] Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983) (construing § 1331); see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988) (similarly construing § 1338(a)).

than pellucid,[3] it recently summed up the requisite inquiry: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. In other words, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. Although the first and second elements are probably satisfied in this case, the third and fourth are not.

The federal issue here is not substantial. "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 313. In Merrell Dow, 478 U.S. at 814, the Court held that where Congress has provided no private remedy for the violation of a federal drug regulatory statute, the fact that violation of the statute is an element of a state tort claim is insufficient to establish a substantial federal interest. As in Merrell Dow, Singh's malpractice claim makes federal law only tangentially relevant to an element of a state tort claim.[4]

---

[3] See, e.g., Merrell Dow, 478 U.S. at 813-14 ("[W]e stressed Justice Cardozo's emphasis on principled, pragmatic distinctions: 'What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of causation . . . a selective process which picks the substantial causes out of the web and lays the other ones aside.'") (quoting Gully v. First Nat'l Bank, 299 U.S. 109, 117-18 (1936)); Grable, 545 U.S. at 314 (observing Court's failure to "stat[e] a single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties") (quotation omitted).

[4] Compare Moore v. Chesapeake & Ohio Ry., 291 U.S. 205, 216-17 (1934) (finding no federal question where violation of federal standard was an element of a state tort suit) with Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 201 (1921) (finding federal question where federal issue was the constitutionality of a federal statute); see also Merrell Dow, 478
(continued...)

But the federal interest here is weaker still. The Merrell Dow Court reasoned that because Congress had established no private remedy for violations of the statute, it had no substantial interest in seeing the statute applied in state tort cases. Federal trademark law not only provides no remedy for aggrieved clients to recover against negligent trademark attorneys but also has an object entirely different from that of state malpractice law. It cannot be said that federal trademark law evinces any substantial federal interest in regulating attorney malpractice.

This is not a case in which the federal issue requires resolution of an important question of law. In Grable, the plaintiff brought a state quiet title action, claiming the defendant's record title was invalid because the IRS had failed properly to notify the plaintiff of its seizure of the property as required by federal statute. The Court found a substantial federal interest in the state action, because "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in federal court" and because the IRS notice requirements implicate the government's "strong interest in the prompt and certain collection of delinquent taxes." Grable, 545 U.S. at 315 (quotation omitted).

In contrast, this case involves no important issue of federal law. Instead, the federal issue is predominantly one of fact$SS$whether Singh had sufficient evidence that his trademark had acquired secondary meaning.[5] Though obviously significant to Singh's claim, that issue does not require "resort to the experience, solicitude, and hope of uniformity that a federal forum offers." Id. at 312.

---

[4] (...continued)
U.S. at 814 n.12 (observing that the "difference in results [between Moore and Smith] can be seen as manifestations of the differences in the nature of the federal issues at stake").

[5] Although the issue on appeal was technically a legal question, insofar as the court held that Singh's evidence of secondary meaning was insufficient as a matter of law, Test Masters Educ. Servs., Inc., 2002 U.S. App. LEXIS 16896, at *15-*16, the question in Singh's malpractice case is primarily a question of fact: whether the evidence Redano failed to present to the trial court would have resulted in a finding of secondary meaning.

Not only is the federal interest insubstantial, but federal jurisdiction over this state-law malpractice claim would upend the balance between federal and state judicial responsibilities. Because federal "jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, . . . there must always be an assessment of any disruptive portent in exercising federal jurisdiction." Id. at 314. Legal malpractice has traditionally been the domain of state law, and federal law rarely interferes with the power of state authorities to regulate the practice of law.[6]

Moreover, Redano's argument for federal jurisdiction reaches so broadly that it would sweep innumerable state-law malpractice claims into federal court. Construing Merrell Dow, the Grable Court, 545 U.S. at 319, observed that a "general rule of exercising federal jurisdiction over state [tort] claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts."[7] Although "violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings," id. at 318 (quotation omitted), the Court in Merrell Dow declined to exert such expansive federal jurisdiction over state-law tort claims, despite the embedded federal issue.

As goes state tort law, so goes its subspeciesSSstate malpractice law. Because all Texas malpractice plaintiffs must prove that they would have prevailed in their prior suits, federal jurisdiction could extend to every instance in which a lawyer commits alleged malpractice during the litigation of a federal claim.

---

[6] See Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996) (observing, in the context of ERISA preemption, that "the law governing legal malpractice represents a traditional exercise of state authority").

[7] Compare Merrell Dow, 578 U.S. at 811 (quotation omitted) (denying jurisdiction over state tort claim while expressing concern over "increased volume of federal litigation") with Grable, 545 U.S. at 315 (granting jurisdiction over state quiet title claim in part because "it will be the rare state title case that raises a contested matter of federal law," and federal jurisdiction "will portend only a microscopic effect on the federal-state division of labor").

That would constitute a substantial usurpation of state authority in an area in which states have traditionally been dominant. In sum, because the federal issue is not substantial, and federal jurisdiction would considerably intrude on state authority, Singh's malpractice claim does not "arise under" federal law.

In so deciding, we decline to follow or extend a recent opinion of the Federal Circuit, which found "arising under" jurisdiction for a malpractice claim stemming from representation in a prior federal patent suit. Observing that "the district court will have to adjudicate, hypothetically, the merits of the infringement claim," that court found "simply no good reason to deny federal jurisdiction." Air Measurement Tech., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P., 504 F.3d 1262, 1269 (Fed. Cir. 2007). The court, however, did not consider the reasons addressed here, involving the federal interest and the effect on federalism. Nor does its holding regarding malpractice in a patent suit directly apply to this case, which involves malpractice in a trademark suit.

It is possible that the federal interest in patent cases is sufficiently more substantial, such that it might justify federal jurisdiction.[8] But we need not decide the question before the Federal Circuit, because it is not before us. We conclude only that jurisdiction does not extend to malpractice claims involving trademark suits like this one.

## III.

Redano alternatively argues that the federal courts have jurisdiction under the All Writs Act. We disagree. In an opinion dismissing a subsequent trademark suit by Singh against TES, see supra note 1, the district court dir-

---

[8] See 28 U.S.C. § 1338(a) (granting federal district courts exclusive jurisdiction over patent cases). In a sparse opinion, this court found "arising under" jurisdiction to hear a state-law breach of contract claim where deciding whether the defendant had breached required determining whether the defendant had infringed the plaintiffs' patents. See Scherbatskoy v. Halliburton Co., 125 F.3d 288, 291 (5th Cir. 1997).

ected the district clerk to "send all cases that Plaintiff Robin Singh might file in the future to the docket of Judge Vanessa D. Gilmore." Redano argues that the All Writs Act confers jurisdiction over this claim to prevent the frustration of the court's order issued in other federal litigation.[9]

It is well established that "the All Writs Act, by itself, creates no jurisdiction in the district courts" and "empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground." Brittingham v. Comm'r, 451 F.2d 315, 317 (5th Cir. 1971). We construe the act narrowly and apply it only under "such extraordinary circumstances . . . that indisputably demand such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment." Texas v. Real Parties in Interest, 259 F.3d 387, 395 (5th Cir. 2001).

That is not the situation here. Judge Gilmore's order was prompted by Singh's litigiousness in repeated attempts to establish secondary meaning in the "Testmasters" mark. Notwithstanding Redano's effort to frame the matter, this case is not an attempt by Singh just to relitigate an issue from his original trademark dispute. This is a malpractice action. Singh claims Redano was negligent when he represented Singh in his suit against TES, and pursuit of that claim against Redano in state court will in no way disturb or interfere with the judgments of the federal courts on the trademark claims against TES. Accordingly, Singh's malpractice action against his former lawyer does not raise the "extraordinary circumstances" required by the All Writs Act.

The judgment is VACATED, and we render a judgment of dismissal for want of jurisdiction.

---

[9] The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).