Affirmed and Majority and Dissenting Opinions filed March 31, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01073-CV

___________________

 

Robin Singh D/B/A Testmasters,
Appellant

 

V.

 

Duane Morris, L.L.P. and Richard T. Redano,
Appellees



 



 

On
Appeal from the 164th District Court

Harris County,
Texas



Trial Court Cause No. 2008-49090

 



 

 

MAJORITY OPINION

            Appellant, Robin Singh d/b/a Testmasters, appeals from
the granting of two motions for summary judgment in favor of appellees, Duane
Morris, L.L.P., and Richard T. Redano.  We affirm.

Factual and Procedural Background

            This
is a legal-malpractice case arising from an underlying trademark case involving
the use of the name “Testmasters.”  Appellees represented appellant in that
litigation.

            Appellant
operated an LSAT[1]-preparation
business in California under the name Testmasters.  Appellant obtained a
federally registered trademark for that name.

In 1999 appellant
decided to create his own website but discovered that Test Masters Educational
Services, Inc. (“TES”), a Houston-based company, was using www.testmasters.com as its domain name.  TES offered preparation
courses for the SAT[2]
and professional-licensing exams and operated only in Texas.  Appellant sent
TES a demand letter claiming that its use of the domain name infringed
appellant’s trademark rights and demanding that TES relinquish the domain name. 
TES responded to appellant’s demand letter by filing suit in Houston federal
district court seeking a declaration of non-infringement.  TES also asserted in
the alternative that appellant’s trademark was invalid.  Appellant retained
appellees to represent him in this litigation, which has become known as
Testmasters I.

Since the nature of
appellant’s mark is at the heart not only of Testmasters I, but also the
current litigation, a brief explanation of the types of marks entitled to
trademark protection under the Lanham Act[3]
is appropriate.  “A trademark is defined in 15 U.S.C. § 1127 as including ‘any
word, name, symbol, or device or any combination thereof’ used by any person
‘to identify and distinguish his or her goods, . . . from those manufactured or
sold by others and to indicate the source of the goods, even if that source is
unknown.’”  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112
S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992).  Marks are usually classified into
the following categories: (1) generic, (2) descriptive, (3) suggestive, (4)
arbitrary, or (5) fanciful.[4] 
Id.  “The latter three categories of marks, because their intrinsic
nature serves to identify a particular source of a product, are deemed
inherently distinctive and are entitled to protection.”  Id.  In
contrast, generic marks are not entitled to trademark protection.  Id. 
In addition, because a descriptive mark is not inherently distinctive, it is
not entitled to trademark protection unless it has become distinctive of the
applicant’s goods in commerce.  Id. at 769.  This acquired
distinctiveness is generally referred to as “secondary meaning.”  Id. 

In Testmasters I, the
jury found that appellant’s mark was descriptive but that it had acquired
secondary meaning.  The jury also found that TES had infringed appellant’s mark
but that TES was immune from liability as an innocent prior user in Texas.  The
federal district court upheld the validity of appellant’s federal trademark
registration but ordered the Patent and Trademark Office to modify appellant’s
trademark registration to allow TES the right to use the mark exclusively in
Texas.  The district court also ordered TES to transfer its ownership of the www.testmasters.com domain name to appellant.  Both sides
appealed to the Fifth Circuit Court of Appeals. The Fifth Circuit reversed,
holding that, as a matter of law, there was insufficient evidence of secondary
meaning.  Test Masters Educ. Servs., Inc. v. Singh, 46 F. App’x 227 (5th
Cir. July 24, 2002).  The Fifth Circuit vacated the federal district court’s
order compelling TES to give the domain name to appellant.  Finally, the Fifth
Circuit remanded the case to the federal district court “for entry of an order
that [appellant’s] trademark is invalid.”  Id. at *5.

Originally, appellant
operated his LSAT-preparation business as a sole proprietorship.  Deciding to
change how he conducted the Testmasters business, appellant formed Robin Singh
Educational Services, Inc. (“Singh Corporation”), a Subchapter S corporation.[5]  In conjunction
with the formation of Singh Corporation, appellant ceased doing business as a
sole proprietorship on December 31, 2002, and beginning January 1, 2003, the
newly established Singh Corporation began conducting the Testmasters business. 
From that point in time, all revenue and expenses for the Testmasters business
were earned or incurred exclusively through Singh Corporation. 

After the Fifth Circuit
reversed the judgment in his favor, appellant filed a legal-malpractice case
against appellees in state district court in Harris County.  Appellant alleged
that appellees committed malpractice in their handling of appellant’s trademark
case in Testmasters I.  According to appellant, appellees negligently failed to
argue that appellant’s Testmasters mark was suggestive, which would entitle it
to automatic trademark protection.  In addition, appellant alleged that
appellees committed malpractice when they failed to introduce sufficient
evidence to prove that appellant’s mark had acquired secondary meaning. 
According to appellant, this failure to introduce sufficient evidence of
secondary meaning resulted from appellees’ fundamental misunderstanding of
which party had the burden of proof on the issue of secondary meaning.

Appellees removed the
case to federal district court where they eventually moved for summary judgment
on appellant’s claims, which the district court granted.  On appeal, the Fifth
Circuit determined there was no federal court jurisdiction, vacated the trial
court’s judgment, and dismissed the case.[6] 
Singh v. Duane Morris, 538 F.3d 334 (5th Cir. 2008).

Appellant re-filed his
malpractice case in state district court in Harris County.  Appellant again alleged
that appellees were negligent in their handling of his case in Testmasters I.  Appellant
sought two categories of damages.  First, appellant sought to recover lost
profits allegedly incurred after January 1, 2003.  Second, appellant sought to
recover the attorney’s fees allegedly paid to several different law firms retained
for the various lawsuits filed in the aftermath of the Fifth Circuit’s decision
in Testmasters I.  According to appellant, Singh Corporaton was forced to
retain these firms in an effort to minimize the damage allegedly resulting from
appellant’s loss of the Testmasters trademark and ownership of the www.testmaster.com domain name.  All of the legal fees appellant
sought to recover were incurred after January 1, 2003.  

Appellees eventually filed
six motions for summary judgment in this re-filed malpractice lawsuit.  We need
only specifically mention three.  Initially, appellees filed “Defendants’
Motion for Summary Judgment (No. 1) for Plaintiff’s Lack of Standing.”  In this
first motion, appellees argued they were entitled to summary judgment because
appellant “cannot recover in his individual capacity for damages allegedly
incurred by Robin Singh Educational Services, Inc. . . ., even though he is its
sole shareholder.”  On November 5, 2009, the trial court denied this motion.

Next, appellees filed “Defendants’
No-Damages Motion for Summary Judgment (No. 3).” In this motion, in addition to
other grounds, appellees again asserted they were entitled to summary judgment
because all of appellant’s “claimed damages and purported lost profits, if any,
were incurred by Singh Corporation and are not recoverable by [appellant],
individually.”  On November 5, 2009, the trial court entered an order on
“Defendants’ No-Damages Motion for Summary Judgment (No. 3)” that (1) granted
the motion in part and dismissed appellant’s claim for alleged lost profits;
(2) denied the motion in part with respect to appellant’s claim for alleged
attorney’s fees incurred as a result of appellant’s negligence; and (3)
deferred ruling on the question of whether appellant had “standing and/or
capacity to recover damages incurred by Robin Singh Educational Services,
Inc.”  Then, on November 30, 2009, the trial court entered a second order on
“Defendant’s No-Damages Motion for Summary Judgment (No. 3)” that was identical
to the first order except the trial court now granted the motion “in part on the
grounds that [appellant] does not have standing and/or capacity to recover
damages incurred by Robin Singh Educational Services, Inc.”

Finally, in “Defendants’
Cross Motion for Summary Judgment on Affirmative Defenses,” appellees moved for
summary judgment on various affirmative defenses including: (1) appellant’s
failure to present additional evidence of secondary meaning as part of a
Federal Rule of Civil Procedure 60(b) motion after the Fifth Circuit reversed
the judgment in Testmasters I; (2) collateral estoppel; and (3) waiver.  On
December 2, 2009, the trial court granted “Defendants’ Cross Motion for Summary
Judgment on Affirmative Defenses.”  This appeal followed.

Discussion

            In
his first three issues on appeal appellant asserts the trial court erred when
it granted appellees’ motions for summary judgment.  In his final issue,
appellant asserts the trial court abused its discretion when it ordered him to
produce the complete files of the attorneys hired following the Fifth Circuit’s
decision in Testmasters I.  We need only address appellant’s first issue.

I.         The standard of
review.

We review a trial court’s summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  In a
traditional motion for summary judgment, the movant has the burden to show
there is no genuine issue of material fact and it is entitled to judgment as a
matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  In determining whether there is a genuine fact issue precluding summary
judgment, evidence favorable to the non-movant is taken as true and the
reviewing court makes all reasonable inferences and resolves all doubts in the
non-movant’s favor.  Id. at 548–49.  If there is no genuine issue of
material fact, summary judgment should issue as a matter of law.  Haase v.
Glazner, 62 S.W.3d 795, 797 (Tex. 2001).  A defendant who conclusively
negates at least one of the essential elements of a plaintiff’s cause of action
is entitled to a summary judgment on that claim.  IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Once a
defendant establishes its right to summary judgment, the burden then shifts to
the plaintiff to come forward with competent controverting summary judgment
evidence raising a genuine issue of material fact.  Centeq Realty, Inc. v.
Siegler, 899 S.W.2d 195, 197 (Tex. 1995).

II.        Can appellant
recover alleged damages incurred by Singh Corporation?

            A.        The
elements of a legal-malpractice cause of action.

To prevail on a legal-malpractice claim, a plaintiff
must show that (1) the attorney owed the plaintiff a duty; (2) the attorney
breached that duty; (3) the breach proximately caused the plaintiff’s injuries;
and (4) damages occurred.  Alexander v. Turtur & Assoc., Inc., 146
S.W.3d 113, 117 (Tex. 2004).  As discussed above, “Defendant’s No-Damages
Motion for Summary Judgment (No. 3)” sought to negate the damages element of
appellant’s malpractice claim. 

B.        Analysis.

It is undisputed that all of appellant’s alleged
damages in this malpractice suit were incurred by Singh Corporation after
January 1, 2003.  In his first issue, appellant contends this undisputed fact
does not impact the viability of his malpractice claim against appellees.  In
support of this contention, appellant asserts that since Singh Corporation is a
Subchapter S corporation and he is the sole shareholder, this court can ignore
the existence of the corporation, a separate legal entity, and determine that he
was “harmed directly by the actions of [appellees] and he has standing to
recover damages.”   We disagree.

The Texas Supreme Court has held that an individual
shareholder, even a sole shareholder such as appellant, has no standing to
recover personally for damages incurred by the corporation.  See Wingate v.
Hadjik, 795 S.W.2d 717, 719 (Tex. 1990) (“Ordinarily, the cause of action
for injury to the property of a corporation, or the impairment or destruction
of its business, is vested in the corporation, as distinguished from its
stockholders, even though it may result indirectly in loss of earnings to the
stockholders.”).

A corporation is a separate legal entity from its
shareholders, officers, and directors.  Sparks v. Booth, 232 S.W.3d 853,
868 (Tex. App.—Dallas 2007, no pet.).  A bedrock principle of corporate law is
that an individual can incorporate a business and thereby normally shield
himself from personal liability for the corporation’s contractual obligations. 
Id.  However, another bedrock principle of corporate law is that a
corporation cannot be used when it benefits the stockholders and be disregarded
when it is to the advantage of the organizers to do so.  See Eastwood Food
Market v. State, 359 S.W.2d 294, 296 (Tex. Civ. App.—Austin 1962), aff’d,
365 S.W.2d 781 (Tex. 1963); see also Adams v. Big Three Industries, Inc.,
549 S.W.2d 411, 413 (Tex. App.—Beaumont 1977, writ ref’d n.r.e.) (“It is
obvious that Adams, Jr. deliberately chose to operate his business as a
corporation, and we are of the opinion that it would be inequitable now to
allow him to recover attorney’s fees as an individual.”).

The fact Singh Corporation is a Subchapter S
corporation does not change this bedrock principle.  Subchapter S status does
not determine who owns the corporation’s earnings.  Thomas v. Thomas,
738 S.W.2d 342, 344 (Tex. App.—Houston [1st Dist.] 1987, writ denied).  Instead,
Subchapter S status merely provides an alternative method to tax the
corporation’s income.  Id.  “The shareholder in a Subchapter S
corporation has no greater rights over corporate property than a shareholder in
any other corporation.”  Id.  Appellant has not cited any authority
holding otherwise.  Indeed, the one case appellant relies on, Kiepfer v.
Beller, 944 F.2d 1213 (5th Cir. 1991), is distinguishable.

In Kiepfer, the plaintiff, a doctor, conducted
his business through a professional association.  Kiepfer, in his individual
capacity, sued three other doctors and an insurance exchange for tortious
interference with his contracts with his patients as well as violations of the
Sherman Antitrust Act.  Id. at 1215–16.  The jury returned verdicts against
two of the doctors and the insurance exchange on both of Kiepfer’s causes of
action and awarded him damages.  Id. at 1217.  The doctors settled before
judgment was entered.  The insurance exchange moved for judgment
notwithstanding the verdict on both causes of action, which the trial court
granted.  Id.  Among the grounds asserted by the insurance exchange was
the argument that the only evidence of damages were to the professional
association, not Kiepfer individually.  Id. at 1222.  On appeal, the Fifth
Circuit, concluding there was no evidence of anti-competitive effect, affirmed
as to the antitrust allegations.  However, the Fifth Circuit reversed and
reinstated the jury’s verdict against the insurance exchange on the tortious-interference
claim.  Id.  In response to the insurance exchange’s damages argument, the
Fifth Circuit held that evidence of Kiepfer’s mental anguish supported the jury’s
verdict.  Id.  As for the introduction of evidence of damages to the
professional association, the Fifth Circuit held:

The jury did not award Dr. Kiepfer damages suffered by his
professional association.  The jury awarded Dr. Kiepfer the damages he
personally suffered as a result of the defendants’ actions.  The fact that
evidence of the damages to the professional association was introduced to prove
damage to his business–which damage must be shown in order to prevail in an
antitrust action–and may have been used by the jury to assist in determining
what damages had accrued to Dr. Kiepfer personally, does not transform the
award into one for damages to the professional association.

Id.  Here, there is no
allegation by appellant that he suffered mental anguish as a result of
appellees’ actions or inactions.  Instead, the only damages he sought to
recover were suffered by Singh Corporation.  Therefore, his reliance on Kiepfer
is misplaced.

            We hold the trial
court did not err when it granted “Defendant’s No-Damages Motion for Summary
Judgment (No. 3).”  We further hold that by doing so, the trial court correctly
determined that appellant did not have standing to recover any of the damages
he sought and thereby disposed of the entire case.  See Swank v. Cunningham,
258 S.W.3d 647, 661 (Tex. App.—Eastland 2008, pet. denied) (“[A] shareholder
who seeks individual redress based on allegations concerning wrongs done to a
corporation lacks standing.”)  We overrule appellant’s first issue on appeal.

Conclusion

            Having
overruled appellant’s first issue on appeal, we affirm the trial court’s
summary judgment.[7]

 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown.

 









[1] LSAT is an acronym
standing for Law School Aptitude Test.





[2] SAT is an acronym
standing for Scholastic Aptitude Test.





[3] Trademark Act of 1946, 15
U.S.C. §§ 1051 et seq.





[4]
A generic term is the name of a particular genus or class of which an
individual article is a member.  Amazing Spaces, Inc. v. Metro Mini Storage,
608 F.3d 225, 241 (5th Cir. 2010).  A generic mark connotes the basic nature of
articles or services rather than the more individualized characteristics of a
particular product.  Id.  These include terms such as aspirin and
cellophane.  Id.  A descriptive term identifies a characteristic or
quality of an article or service, such as its color, odor, or function.  Id. 
An example would be Vision Center for a business offering optical services.  Id. 
A suggestive term suggests, rather than describes, some particular
characteristic of the goods or services and requires the consumer to use
imagination in order to draw a conclusion as to the nature of the goods or
services.  Id.  An example of a suggestive term is Coppertone.  Finally,
arbitrary or fanciful terms bear no relationship to the products or services to
which they are applied.  Examples include Kodak for photographic supplies and
Ivory for soap products.  Id.





[5] “Under Subchapter S of
the Small Business Corporation Act, 26 U.S.C.A. §§ 1371-79, a corporation may
elect a tax status which protects the earnings and profits of the corporation
from conventional corporate tax rates.”  Suburban Utility Corp. v. Public
Utility Commission of Texas, 652 S.W.2d 358, 363 (Tex. 1983).





[6] Both sides in this appeal
spent much time in their briefs addressing the federal district court’s orders
in the removed malpractice case.  However, we note that since the Fifth Circuit
determined there was no federal jurisdiction, all of the federal district
court’s orders, as well as the final judgment, are void and have no legal
significance.  See Shirley v. Maxicare Tex., Inc., 921 F.2d 565, 568
(5th Cir. 1991) (holding that if a federal court does not possess subject-matter
jurisdiction over a dispute, any order it makes is void).





[7] Because we have overruled
appellant’s first issue on appeal and by doing so have affirmed the trial
court’s granting of summary judgment as to appellant’s entire case against
appellees, we need not address appellant’s remaining issues on appeal.  Tex. R.
App. P. 47.1.