**COMMUNITY PLACE, Plaintiff**

v.

**MID SOUTH REHAB SERVICES, INC., Defendant.**

Civil Action No. 3:13–cv–578–WHB–RHW.

United States District Court, S.D. Mississippi, Northern Division.

Signed Feb. 19, 2014.

Neville H. Boschert, Andrew S. Harris, Jones Walker Waechter Poitevent Carrere & DeNegre, Gene A. Wilkinson, Stennett, Wilkinson & Peden, Jackson, MS, for Plaintiff.

Allison C. Simpson, Thomas L. Kirkland, Jr., Copeland, Cook, Taylor & Bush, Ridgeland, MS, for Defendant.

## OPINION AND ORDER

WILLIAM H. BARBOUR, JR., District Judge.

This cause is before the Court on the Motion of Plaintiff to Remand. Having considered the pleadings as well as supporting and opposing authorities, the Court finds the Motion is well taken and should be granted.

### I. Factual Background and Procedural History

Plaintiff, Community Place, is a non-profit corporation that operates as a skilled nursing home in Jackson, Mississippi. In 2003, Community Place entered a contract with Mid South Rehab Services, Inc. ("Mid South"), by which the latter agreed to provide speech and language pathology, and occupational and physical therapy services to clients of Community Place. Under the terms of the contract, Mid South was required to perform therapy services "in accordance with all applicable requirements of Federal, State or local laws, rules and/or regulations and third party reimbursement sources." Compl. at ¶ 11. Further, Mid South was required to provide adequate and timely written documentation that complied with "accepted professional standards". *Id.* Mid South also agreed to provide, *inter alia*, a clinical director and all necessary staff for the facility, and treatment plans and continuing assessments for clients at Community Place. *Id.* at ¶ 12. Finally, with respect to the disallowance of Medicare payments for services provide by Mid South, the contract provided that Mid South was "re-

sponsible for contesting the denial letters" and, if "unsuccessful in satisfying the denials, would reimburse Community Place for any payments made for all denials of therapy services except those delineated as Community Place's responsibility." *Id.* at ¶ 14 (alterations in original).

In 2010, AdvanceMed Corporation ("AdvanceMed"), which is identified as the Zone Program Integrity Contractor for Medicare Part A services in Mississippi, appeared unannounced at Community Place for the purpose of conducting interviews and reviewing patient files. *Id.* at ¶ 18. In April of 2011, AdvanceMed notified Community Place that its Medicare payments were being suspended based on "credible allegations of fraud." *Id.* at ¶ 19. The allegations of fraud were based, in part, on chart reviews done by AdvanceMed that indicated that some patients should not have been considered eligible for extended therapy services because they lacked rehabilitation potential or were not able to actively participate in therapy because of mental and/or physical deficiencies. *Id.* at ¶ 19.

During the course of the investigation, Community Place allegedly learned that Mid South maintained "soft files" or working files in its offices that were not part of a patient's chart. Community Place contends the maintaining of "soft files" is not standard practice in the health care industry, and led to "significant confusion" by the parties as well as AdvanceMed. *Id.* at ¶ 22. After AdvanceMed suspended Medicare payments, Mid South allegedly removed multiple files from Community Place, and has refused to either return or make those files available for review. *Id.* at ¶ 23. Additionally, during the course of the investigation, Community Place learned that Mid South had terminated, and sought the license revocation of, several therapists and a supervisor because of improper documentation, namely that they had documented therapy services that had not been performed. *Id.* at ¶¶ 24, 25.

Mid South continued to provide therapy services at Community Place, and Community Place continued to pay Mid South for those services even though Medicare payments had been suspended. *Id.* at ¶ 26. In February of 2012, Community Place advised Mid South that it would cease paying for therapy services pending a determination as to whether Medicare would pay for those services. *Id.* at ¶ 27. When Community Place rejected the demand made by Mid South for continued payments, Mid South purportedly terminated the contract. *Id.* According to Community Place, it has paid Mid South over $3,000,000 for services under the contract. *Id.*

In April of 2012, Community Place was notified that the suspension of Medicare payments was being rescinded. At that time, AdvanceMed also released the findings of its investigation, which included its review of the therapy services provided by Mid South. The findings allegedly included that (1) Mid South provided more therapy services than ordered, (2) available documentation did not support the level of therapy that was billed, and (3) therapy had been provided to patients who were not appropriate for skilled therapy care. *Id.* at ¶ 28. The findings also allegedly showed that Mid South had billed for therapy on days on which the facility/equipment was not available. *Id.* at ¶ 29.

Based on the investigation by AdvanceMed, Pinnacle Business Solutions, Inc., which is identified as the Medicare Part A Fiscal Intermediary and Part B carrier for Mississippi, informed Community Place that it had been overpaid $796,722.46 for therapy services. *Id.* at ¶ 30. After offsetting the overpayment amount with pending payments, Community Place was

required to re-pay Medicare $169,138.46. *Id.* at ¶ 31. Community Place appealed the findings of AdvanceMed, and alleges that Mid South refused to provide any assistance during the appeal.

In August of 2013, Community Place filed a lawsuit against Mid South in the First Judicial District of Hinds County, Mississippi, alleging claims including breach and tortious breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duties, negligent misrepresentation, conversion, and unjust enrichment. The lawsuit was removed to this Court on claims that the Complaint alleges substantial questions of federal law. Specifically, in its Notice of Removal, Mid South claims:

> The complaint makes numerous allegations that Mid South failed to comply with federal laws and regulations, particularly those set by the federal Medicare program.... Further, the complaint makes allegations that penalties imposed by Medicare upon Community Place were the fault of Mid South.... Essentially, Community Place claims that Mid South failed to comply with federal Medicare statutes and regulations, and that by so doing, it caused Community Place to be penalized by Medicare.

> Therefore, in order for Community Place to secure the relief it seeks, it will be obliged to establish both the correctness and the applicability to its case of various propositions of federal law. Community Place's right to relief under some or all of the state-law claims it has pleaded will require resolution of substantial questions of federal law in dispute between the parties: Mid South contends that it followed federal law and that Community Place's own breaches of federal law were the cause of its damages, but Community Place contends the converse. Interpretation of these stat-

utes and regulations and of their applicability to the parties' acts and omissions is an essential element of some or all of Community Place's claims. The meaning of these Medicare provisions raises important questions of federal law which are more appropriately resolved in this federal forum.

Not. of Removal [Docket No. 1], ¶¶ 3, 4. Community Place has now moved for remand.

## II. Standard

■■■ A federal question, for the purpose of conferring federal subject matter jurisdiction under 28 U.S.C. § 1331, exists "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir.2008). As regards the latter, it is well settled that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)(citing *Franchise Tax Bd. of Ca. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Similarly, "the presence of a disputed federal issue ... [is] never necessarily dispositive." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005). Instead, the issue of whether a claim that "finds its origins in state rather than federal law" is within the "special and small category of cases in which arising under jurisdiction still lies", is decided using the following inquiry:

> Does the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing

any congressionally approved balance of federal and state judicial responsibilities? That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn v. Minton,* —— U.S. ——, 133 S.Ct. 1059, 1064–64, 185 L.Ed.2d 72 (2013) (internal citations omitted). *See also Singh,* 538 F.3d at 338 (explaining that a state law claim raises a federal issue for the purpose of conferring federal question jurisdiction only in those cases in which "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.").

## III. Discussion

■ In its pleadings, Mid South argues that substantial federal questions are raised in the Complaint because all of the claims alleged by Community Place are predicated on allegations that Mid South failed to comply with federal Medicare regulations. Contrarily, Community Place argues that substantial federal questions do not exist. After reviewing the Complaint and applicable authorities, the Court finds Mid South has failed to show either (1) that resolving a federal issue is necessary to adjudicate the state law claims alleged in the Complaint, or (2) that any

federal issues that may exist in this case are substantial.

As discussed above, when considering whether a substantial federal question has been raised, courts first consider whether "resolving a federal issue is necessary to resolution of the state-law claim". *Singh,* 538 F.3d at 338. In the Complaint, Community Place alleges that Mid South breached the terms of the contract by "fail[ing] to comply with all Medicare Conditions of Participation and JCAHO standards …", *see* Compl., ¶ 51, which could arguably qualify as a federal issue. Community Place also alleges, however, that Mid South breached the subject contract by failing to adequately document treatment in each patient's chart and by failing to perform required services including providing necessary staff, providing treatment according to physician order, screening and reassessing patients, and participating in meetings. *Id.* at ¶¶ 49, 52. Additionally, Community Place alleges that Mid South breached and/or tortiously breached the subject contract, as well as its corresponding duties of good faith and fair dealing, by, *inter alia:* (1) "refusing to cooperate with Community Place to appeal the denials of the Medicare payments"; and (2) "failing to provide therapy services … in the manner that is consistent with the terms of the contract and as expected by Community Place". *Id.* ¶¶ 57, 62. As Community Place alleges that the contract was breached based on conduct that is not related to Medicare compliance, the Court finds Mid South has failed to show that resolving issues related to Medicare are necessary to resolve the breach of contract-related claims in the Complaint. *See e.g. Howery v. Allstate Ins. Co.,* 243 F.3d 912, 918 (5th Cir.2001) (finding that a substantial federal question had not been raised in a case in which the plaintiff had alleged a violation of federal law as "one of many alternate grounds for finding a viola-

tion of [state law]" because, "[a]s an alternate theory supporting a single claim, the federal question is not a necessary element of the state claim . . ."); *Goffney v. Bank of Am., N.A.,* 897 F.Supp.2d 520, 525–26 (S.D.Tex.2012)("When a claim can be supported by alternative and independent theories of recovery, one based on state law and the other on federal law, that claim may not form the basis for federal question jurisdiction because federal law is not a 'necessary' element of the claim.")(citing *Willy v. Coastal Corp.,* 855 F.2d 1160, 1170–71 (5th Cir.1988)); *Moncure v. Olympus Am., Inc.,* 290 F.Supp.2d 726, 728–29 (S.D.Miss.2003)(finding the plaintiff's complaint did not raise a substantial federal question in a case in which proof of a violation of a federal regulation was not a necessary or required element for recovery, and that the alleged failure to comply with federal guidelines was only one of several alternate grounds for finding liability). *See also Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 810, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) ("Nor is it necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a [federal] law question is essential. If 'on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [federal laws as to] why the [plaintiff] may or may not be entitled to the relief it seeks,' then the claim does not 'arise under' those laws.")(citing *Franchise Tax,* 463 U.S. at 26 and n. 9, 103 S.Ct. 2841) (alterations in original).

In its Complaint, Community Place also alleges claims of breach of fiduciary duties and negligent misrepresentation that are predicated, in part, on allegations that Mid South provided more therapy services than had been ordered, and failed to provide documentation to support the level of therapy that was billed. *Id.* at ¶¶ 86, 95. Community Place has alleged a claim of

conversion that is predicated on allegations that Mid South wrongfully took possession of, and refused to return, patient medical records and other documents. *Id.* at ¶¶ 99–100. Finally, Community Place alleges a claim of unjust enrichment that is predicated on allegations that Mid South has refused to refund money it was paid for therapy services that were not covered by Medicare. *Id.* at ¶¶ 105–107. Again, as all of these claims are predicated, in part, on conduct that is not related to Medicare compliance, the Court finds Mid South has failed to show that resolving issues related to Medicare compliance are necessary to resolve these claims. Thus, the Court finds Mid South has failed to show that resolving a federal issue is necessary to adjudicate the state law claims alleged by Community Place in its Complaint.

Under *Singh,* a court must also consider whether the federal issues raised in a complaint are substantial. "While there is no bright-line rule regarding whether a state-law claim presents a 'substantial' federal question, the Supreme Court has identified a number of factors that weigh in favor of such a finding: (1) that the case presents a nearly pure issue of law that would control many other cases rather than an issue that is fact-bound and situation-specific; (2) that the federal government has an important interest in the issue, particularly if the case implicates a federal agency's ability to vindicate its rights in a federal forum; and (3) that a determination of the federal question will be dispositive of the case." *Marren v. Stout,* 930 F.Supp.2d 675, 683 (W.D.Tex.2013)(citing *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700–01, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)). The Court finds none of these factors are satisfied in this case.

First, there has been no showing that this case either presents a nearly pure issue of law or would be controlling in many other cases. Here, the Court is not being asked to define or interpret, as a matter of law, the meaning or applicability of any Medicare regulation. Instead, the Court is being asked to consider whether the therapy services provided by Mid South, or the documentation submitted by Mid South, complied with those regulations. As such, the Court finds the issue of Medicare compliance presented in this case is "fact-bound" and "situation-specific" and, therefore, cannot be considered substantial for the purpose of conferring federal question jurisdiction. *See e.g. Empire Healthchoice*, 547 U.S. at 701, 126 S.Ct. 2121 (finding substantial question jurisdiction did not exist in a case in which the federal issue to be decided was "fact-bound and situation-specific"); *Singh*, 538 F.3d at 339 (finding substantial question jurisdiction did not exist in a case in which the federal issue to be decided was "predominantly one of fact").

Second, there has been no showing that the federal government has any interest in the Medicare compliance issues raised in the Complaint, or is otherwise trying to vindicate its rights in this litigation. Finally, the Court finds that the determination of the federal Medicare compliance issue will not be dispositive in this case because, even if Mid South was successful in proving it had fully complied with the Medicare regulations, Community Place could nevertheless recover on any of its state law claims based on the alternate theories of liability alleged in the Complaint.

In sum, the Court finds Mid South has failed to satisfy its burden to show either that resolving the Medicare compliance issues raised in the Complaint is necessary to adjudicate the state law claims alleged by Community Place, or that the Medicare compliance issues would be considered "substantial" under controlling precedent. Accordingly, the Court finds Mid South has failed to show that a substantial federal question exists and, therefore, has failed to show that the Court could properly exercise federal subject matter jurisdiction under 28 U.S.C. § 1331. Based on these findings, the Motion of Community Place to Remand will be granted.

## IV. Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [Docket No. 5] is hereby granted, with each party bearing its own costs.

IT IS FURTHER ORDERED that the Clerk of Court is directed to remand this case to the Circuit Court for the First Judicial District of Hinds County, Mississippi.